**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **FAITH BLAKE (No. 73053-279), et al.,** | § | |
| | § | **Civil Action No. 4:20-CV-00854-P** |
| | § | |
| *Plaintiffs*, | § | **(Civil Action Nos. 4:20-CV-00807-P; 4:20-** |
| | § | **CV-00852-P; 4:20-CV-00854-P; 4:20-CV-** |
| | § | **00856-P; 4:20-CV-00858-P; 4:20-CV-** |
| | § | **00871-P; 4:20-CV-00879-P; 4:20-CV-** |
| **vs.** | § | **00880-P; 4:20-CV-008881-P; 4:20-CV-** |
| | § | **00885-P; 4:20-CV-00890-P; 4:20-CV-** |
| | § | **00902-P; 4:20-CV-00908-P; 4:20-CV-** |
| | § | **00909-P; 4:20-CV-00913-P; 4:20-CV-** |
| **MICHAEL CARR, In His Official** | § | **00916-P; 4:20-CV-00918-P; 4:20-CV-** |
| **Capacity, THE FEDERAL BUREAU OF** | § | **00919-P; 4:20-CV-00920-P; 4:20-CV-** |
| **PRISONS, and UNKNOWN** | § | **01045-P; 4:20-CV-01052-P; 4:20-CV-** |
| **DEFENDANTS,** | § | **01095-P; 4:20-CV-01096-P; 4:20-CV-** |
| | § | **01120-P; 4:20-CV-00898-P; 4:20-CV-** |
| *Defendants*. | § | **00910-P; 4:20-CV-00873-P; 4:20-CV-** |
| | § | **00891-P; 4:20-CV-00910-P; 4:20-CV-** |
| | § | **00882-P; 4:20-CV-00907-P; 4:20-CV-** |
| | § | **00905-P; 4:20-CV-1081-P Consolidated** |
| | § | **into Civil Action No. 4:20-CV-00854-P)** |
| | § | |

**PLAINTIFFS' CONSOLIDATED COMPLAINT
FOR INJUNCTIVE AND DECLARATORY RELIEF**

TO THE HONORABLE COURT:

Pursuant to the Court's Order dated December 22, 2020, Plaintiffs Faith Blake, Shelly

Mixon, Stephanie Walker, Tiffany Snodgrass, Peggy Chaffin, Victoria Martinez, Ariel Bishop,

Genesis Gonzalez, Georgia Gregg, Tesa Keith, Laura Shauger, Candice Klein, Christina Juarez,

Eugenia Rowland, Jessica Chronister, Jennifer Barela, Tara Childress, Kristina Koehn, Rose

Meyers, Fabiola Sanchez, Elva Sofia Ibarra, Marie Nunez, Sylvia Rodriguez Poblano, Connie

Velez, Amy Robertson, Brandi Moore, Samantha Forsythe, Crystal Thomas, Juliana Lourde,

Veronica Valenzuela, Carolina Medellin, Karen Mae Lee and Wendy Espinoza (collectively,

"Plaintiffs") file this Consolidated Complaint For Injunctive And Declaratory Relief against Defendants Michael Carr, In His Official Capacity, The Federal Bureau of Prisons, and Unknown Defendants (collectively, "Defendants"), and, in support thereof, respectfully show the Court as follows:

## INTRODUCTION

1.     Plaintiffs, who are inmates at the Bureau of Prisons' Federal Medical Center Carswell facility located in Fort Worth, Texas, seek injunctive relief against Defendants as a result of inadequate and dangerous conditions related to COVID-19 and record-breaking low temperatures at Carswell. By way of example, 725 women out of 1,304 total inmates at Carswell have been infected with COVID-19, and six of those women died. Carswell is suffering once again from a widespread outbreak at its facility, with currently 153 inmates testing positive for COVID-19. As explained herein, Defendants have been deliberately indifferent to Plaintiffs' Constitutional rights by, among other things,

- Refusing to provide COVID-19 testing in an effort to "reduce" the confirmed cases;

- Failing to provide immediate and/or adequate medical care to them when they complained of symptoms and/or pains;

- Failing to adopt and implement policies and procedures to prevent and mitigate the spread of COVID-19 remotely consistent with Center for Disease Control guidelines;

- Imposing further harm and mental/physical stress through forced moves from housing unit to housing unit, increasing the risk of exposure;

- Forcing Plaintiffs into extremely crowed situations, such as town hall meetings, long meal lines, etc., eliminating their ability to maintain social distancing;

**PLAINTIFFS' CONSOLIDATED COMPLAINT FOR**    **PAGE 2 OF 26**
**INJUNCTIVE AND DECLARATORY RELIEF**

- Failing to provide proper personal protective equipment;

- Issuing blanket denials of compassionate release/home confinement requests by applying incorrect guidelines that conflict with the expressed policies of the Department of Justice; and

- Failing to provide proper heating systems during the all-time record-breaking low temperatures that hit Texas on February 16, 2021.

2. Defendants have also refused to treat and care for other medical conditions that Plaintiffs suffer from, resulting in a violation of the of Section 504 of the Rehabilitation Act.

3. Accordingly, Plaintiffs request immediate relief to help correct these issues and prevent further irreparable harm.

### JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the Eighth Amendment of the United States Constitution, and the laws of the United States.

5. Venue is proper pursuant to 28 U.S.C. § 1391(e)(1)(B) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.[1]

### PARTIES

6. Plaintiff Faith Blake – Inmate No. 76053-279 – has been incarcerated at Carswell at all relevant times.

7. Plaintiff Shelly Mixon – Inmate No. 12079-480 – has been incarcerated at Carswell at all relevant times.

---

[1] "A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority . . . may, except as otherwise provided by law, be brought in any judicial district in which . . . a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(e)(1)(B).

**PLAINTIFFS' CONSOLIDATED COMPLAINT FOR**
**INJUNCTIVE AND DECLARATORY RELIEF**

**PAGE 3 OF 26**

8.      Plaintiff Stephanie Walker – Inmate No. 27266-078 – has been incarcerated at Carswell at all relevant times.

9.      Plaintiff Tiffany Snodgrass – Inmate No. 20160-043 – has been incarcerated at Carswell at all relevant times.

10.     Plaintiff Peggy Chaffin – Inmate No. 70653-061 – has been incarcerated at Carswell at all relevant times.

11.     Plaintiff Victoria Martinez – Inmate No. 74453-479 – has been incarcerated at Carswell at all relevant times.

12.     Plaintiff Ariel Bishop  – Inmate No. 27411-009 – has been incarcerated at Carswell at all relevant times.

13.     Plaintiff Genesis Gonzalez – Inmate No. 19703-480 – has been incarcerated at Carswell at all relevant times.

14.     Plaintiff Georgia Gregg – Inmate No. 09223-479 – has been incarcerated at Carswell at all relevant times.

15.     Plaintiff Tesa Keith – Inmate No. 58769-177 – has been incarcerated at Carswell at all relevant times.

16.     Plaintiff Laura Shauger – Inmate No. 68517-066 – has been incarcerated at Carswell at all relevant times.

17.     Plaintiff Christina Juarez – Inmate No. 48416-177 – has been incarcerated at Carswell at all relevant times.

18.     Plaintiff Eugenia Rowland – Inmate No. 13940-273 – has been incarcerated at Carswell at all relevant times.

19.    Plaintiff Jessica Chronister – Inmate No. 27884-064 – has been incarcerated at Carswell at all relevant times.

20.    Plaintiff Jennifer Barela – Inmate No. 89655-051 – has been incarcerated at Carswell at all relevant times.

21.    Plaintiff Tara Childress – Inmate No. 27847-045 – has been incarcerated at Carswell at all relevant times.

22.    Plaintiff Rose Meyers – Inmate No. 08419-063 – has been incarcerated at Carswell at all relevant times.

23.    Plaintiff Fabiola Sanchez – Inmate No. 85255-280 – has been incarcerated at Carswell at all relevant times.

24.    Plaintiff Elva Sofia Ibarra – Inmate No. 48282-177 – has been incarcerated at Carswell at all relevant times.

25.    Plaintiff Marie Nunez – Inmate No. 26633-078 – has been incarcerated at Carswell at all relevant times.

26.    Plaintiff Sylvia Rodriguez Poblano – Inmate No. 81880-179 – has been incarcerated at Carswell at all relevant times.

27.    Plaintiff Connie Velez – Inmate No. 33190-145 – has been incarcerated at Carswell at all relevant times.

28.    Plaintiff Amy Robertson – Inmate No. 12574-028 – has been incarcerated at Carswell at all relevant times.

29.    Plaintiff Brandi Moore – Inmate No. 37492-480 – has been incarcerated at Carswell at all relevant times.

30.     Plaintiff Samantha Forsythe – Inmate No. 31158-064 – has been incarcerated at Carswell at all relevant times.

31.     Plaintiff Crystal Thomas – Inmate No. 27832-078 – has been incarcerated at Carswell at all relevant times.

32.     Plaintiff Juliana Lourde – Inmate No. 28023-078 – has been incarcerated at Carswell at all relevant times.

33.     Plaintiff Veronica Valenzuela – Inmate No. 50918-051 – has been incarcerated at Carswell at all relevant times.

34.     Plaintiff Karen Mae Lee – Inmate No. 57409-380 – has been incarcerated at Carswell at all relevant times.

35.     Plaintiff Wendy Espinoza – Inmate No. 12293-010 – has been incarcerated at Carswell at all relevant times.

36.     Defendant Michael Carr is the Warden of the Federal Medical Center Carswell. Defendant Carr may be served with the summons and complaint through the U.S. Attorney Prerak Shah, Burnett Plaza Suite 1700, 801 Cherry Street, Unit #4, Fort Worth, Texas 76102-6882. A copy of the summons and complaint will also be sent by certified mail to Defendant Carr at FMC Carswell, Federal Medical Center, P.O. Box 27066, Fort Worth, Texas 76127.

37.     Defendant The Federal Bureau of Prisons (hereinafter "BOP") is a United States federal law enforcement agency under the Department of Justice responsible for the care, custody, and control of incarcerated individuals. Defendant BOP may be served with the summons and complaint through the U.S. Attorney Prerak Shah, Burnett Plaza Suite 1700, 801 Cherry Street, Unit #4, Fort Worth, Texas 76102-6882. A copy of the summons and complaint will also be sent by certified mail to Defendant BOP at 320 First St., NW, Washington, DC 20534.

38.     This Complaint will be amended once the actual names and descriptions of currently Unknown Defendants are discovered.

## FACTUAL ALLEGATIONS

### I.     COVID-19 Is a Dangerous, Contagious Illness that Poses a Significant Risk of Serious Illness and Death.

39.     COVID-19 is a deadly and highly contagious disease caused by a novel coronavirus.[2] COVID-19 spreads easily from person to person through respiratory droplets and close personal contact.[3] People who are asymptomatic can unknowingly transmit the virus, making its spread particularly difficult to slow.[4]

40.     As of February 8, 2021, there have been more than 106 million confirmed cases of COVID-19, and more than 2.3 million related deaths.[5] More than 27 million of these cases and more than 460,000 deaths were in the United States.[6] The mortality rate for COVID-19 in the United States by population equates to about 141 deaths per every 100,000 people.[7]

41.     All people, regardless of age or health, risk serious illness and even death from COVID-19.[8] The case fatality rate can be significantly higher depending on the presence of certain demographic and health factors. The rate varies significantly with advancing age, with older adults

---

[2] On March 11, 2020, the World Health Organization ("WHO") classified COVID-19 as a pandemic. *WHO Characterizes COVID-19 as a Pandemic*, WORLD HEALTH ORGANIZATION (Mar. 11, 2020), https://bit.ly/2W8dwpS (last visited Feb. 8, 2021).
[3] *How COVID-19 Spreads*, CTRS FOR DISEASE CONTROL AND PREVENTION (Oct. 28, 2020), https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html.
[4] *Id.*
[5] *COVID-19 Dashboard*, *supra* note 1.
[6] *Id.*
[7] *Mortality Analyses*, JOHNS HOPKINS UNIVERSITY OF MEDICINE, https://coronavirus.jhu.edu/data/mortality (last updated Feb. 8, 2021).
[8] *Assessing Risk Factors*, CTRS FOR DISEASE CONTROL AND PREVENTION (last updated Nov. 20, 2020), https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/assessing-risk-factors.html.

at highest risk.[9] Adults of any age with certain pre-existing medical conditions are at increased risk.[10]

42.    According to the CDC, people aged 50-64 who develop COVID-19 are four times more likely to be hospitalized than 18 to 29-year-olds, and 30 times more likely to die.[11] People aged 65 to 74 are five times more likely to be hospitalized than 18 to 29-year-olds and 90 times more likely to die.[12]

43.    People of all ages face higher risk of hospitalization and death if they have underlying medical conditions, including cancer, diabetes, chronic obstructive pulmonary disease ("COPD"), moderate to severe asthma, serious heart conditions (such as heart failure or coronary artery disease), obesity, chronic kidney disease, or compromised immune systems (such as from a solid organ transplant, blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids or other immune weakening medicines), sickle cell disease, stroke, cerebrovascular disease, cystic fibrosis, hypertension, neurologic conditions (such as dementia, liver disease, or pulmonary fibrosis), current or former smoking, and thalassemia.[13]

44.    Serious complications from COVID-19 can develop rapidly. Some individuals can show symptoms of the infection as early as two days from the date of exposure, and their conditions

---

[9] *Older Adults*, CTRS FOR DISEASE CONTROL AND PREVENTION (last updated Dec. 13, 2020) https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html.

[10] *People with Certain Medical Conditions*, CTRS FOR DISEASE CONTROL AND PREVENTION (last updated Feb. 3, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html.

[11] COVID-19 Hospitalization and Death by Age, CTRS FOR DISEASE CONTROL AND PREVENTION (last updated Aug. 18, 2020), https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-death-by-age.html.

[12] *Id.*

[13] *People with Certain Medical Conditions*, CTRS FOR DISEASE CONTROL AND PREVENTION (last updated Feb. 3, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html.

---

**PLAINTIFFS' CONSOLIDATED COMPLAINT FOR**                    **PAGE 8 OF 26**
**INJUNCTIVE AND DECLARATORY RELIEF**

can seriously deteriorate in less than five days.[14] For some, the symptoms can be so severe that they often require advanced medical support, including specialized equipment, such as ventilators and large teams of highly trained care providers such as ICU doctors, nurses, and respiratory therapists. The artificial ventilation process is itself invasive and dangerous, and some patients must be placed in medically induced comas for such treatment.[15]

45.     Even for those that are lucky enough to survive the virus, the lingering effects of the virus can be devastating, with some suffering severe long lasting medical problems such as damage to lung tissue, including permanent loss of respiratory capacity, and damage to other vital organs, such as the heart, central nervous system, and liver.[16]

## II.     The Risk From COVID-19 is Particularly High in Prisons.

46.     According to CDC guidelines, there are three measures that can effectively reduce the spread of this fatal disease: (1) diligent "social or physical distancing" to avoid transmission of the virus;[17] (2) covering the mouth and nose with a mask or cloth;[18] and (3) vigilant hygiene practices, including frequently washing hands and disinfecting surfaces.[19]

---

[14] *See* Sarah Jarvis, *Coronavirus: How Quickly Do COVID-19 Symptoms Develop and How Long Do They Last?*, PATIENT (Jan. 8, 2021), https://patient.info/news-and-features/coronavirus-how-quickly-do-covid-19-symptomsdevelop-and-how-long-do-they-last.

[15] Carrie MacMillian, *Ventilators and COVID-19: What You Need to Know*, YALE MEDICINE (June 2, 2020),https://www.yalemedicine.org/news/ventilators-covid-19.

[16] Panagis Galiatsatos, *What Coronavirus Does to the Lungs*, JOHNS HOPKINS MEDICINE (Apr. 13, 2020), https://www.hopkinsmedicine.org/health/conditions-and-diseases/coronavirus/what-coronavirus-does-to-the-lungs.COVID-19 can trigger an over-response of the immune system, further damaging tissues in a cytokine release syndrome that can result in widespread damage to other organs, including permanent injury to the kidneys and neurologic injury. *Id*

[17] *See, e.g.*, *Social Distancing, Quarantine, and Isolation*, CTRS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/social-distancing.html (last updated Nov. 17, 2020).

[18] *How to Protect Yourself & Others*, CTRS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html (last updated Feb. 4, 2021).

[19] *See id.* For additional guidance related to prevention of COVID-19 in prisons specifically, *see also* Megan Wallace et al, *COVID-19 in Correctional and Detention Facilities – United States, February-April 2020*, CTRS FOR DISEASE CONTROL AND PREVENTION (May 15, 2020), https://www.cdc.gov/mmwr/volumes/69/wr/mm6919e1.htm [hereinafter, "*COVID-19 in Correctional and Detention Facilities*"]; *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, CTRS FOR DISEASE CONTROL AND

47.     In prisons, incarcerated persons and staff interact in close proximity and cramped quarters designed to confine people rather than distance them. Incarcerated people, by the fact of their incarceration, have little autonomy or control of their movements. As a result, incarcerated people are highly susceptible to rapid transmission of the virus through contact with other people, including asymptomatic carriers, and touching common surfaces.

48.     Further, incarcerated people, correctional staff, medical staff, and contractors regularly move in and out of correctional facilities and the greater community, as well as across different housing units within prisons. Such movement creates an ever-present risk that persons, including asymptomatic carriers, will carry the virus in and out of those facilities, spreading infection and triggering outbreaks.[20]

49.     In addition, prisons are at an increased risk for the rapid spread of an infectious disease—like COVID-19—because of the high number of people with chronic, often untreated, illnesses housed in a setting with minimal levels of sanitation, limited access to personal hygiene, limited access to medical care, and limitations on physical distancing.[21]

50.     As the chart below illustrates, health conditions that make COVID-19 particularly dangerous are more prevalent in the incarcerated population than in the general public.[22]

---

PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (last updated Dec. 31, 2020) [hereinafter "*Interim Guidance*"].

[20] *See COVID-19 in Correctional and Detention Facilities*, *supra* note 19, at 587.

[21] *See generally* I.A. Binswanger et al., *Prevalence of Chronic Medical Conditions Among Jail and Prison Inmates in the USA Compared With the General Population*, 63 J. EPIDEMIOLOGY & COMMUNITY HEALTH 912 (2009) (concluding that incarcerated people in the U.S. had a higher burden of most chronic medical conditions than the general population, even adjusting for sociodemographic differences and alcohol consumption).

[22] Peter Wagner & Emily Widra, *Five ways the criminal justice system could slow the pandemic*, PRISON POLICY INITIATIVE (March 27, 2020), https://www.prisonpolicy.org/blog/2020/03/27/slowpandemic/.

**PLAINTIFFS' CONSOLIDATED COMPLAINT FOR** **PAGE 10 OF 26**
**INJUNCTIVE AND DECLARATORY RELIEF**

| Health condition | Prevalence of health condition by population | | | |
| --- | --- | --- | --- | --- |
| | Jails | State prisons | Federal prisons | United States |
| Ever tested positive for Tuberculosis | 2.5% | 6.0% | | 0.5% |
| Asthma | 20.1% | 14.9% | | 10.2% |
| Cigarette smoking | n/a | 64.7% | 45.2% | 21.2% |
| HIV positive | 1.3% | 1.3% | | 0.4% |
| High blood pressure/hypertension | 30.2% | 26.3% | | 18.1% |
| Diabetes/high blood sugar | 7.2% | 9.0% | | 6.5% |
| Heart-related problems | 10.4% | 9.8% | | 2.9% |
| Pregnancy | 5.0% | 4.0% | 3.0% | 3.9% |

*Health conditions that make respiratory diseases like COVID-19 more dangerous are far more common in the incarcerated population than in the general U.S. population. Pregnancy data come from our report, Prisons neglect pregnant women in their healthcare policies, the CDC's 2010 Pregnancy Rates Among U.S. Women, and data from the 2010 Census. Cigarette smoking data are from a 2016 study, Cigarette smoking among inmates by race/ethnicity, and all other data are from the 2015 BJS report, Medical problems of state and federal prisoners and jail inmates, 2011-12, which does not offer separate data for the federal and state prison populations. Cigarette smoking may be part of the explanation of the higher fatality rate in China among men, who are far more likely to smoke than women.*

51.     Multiple public health experts, including Dr. Gregg Gonsalves,[23] Dr. Ross MacDonald,[24] Dr. Marc Stern,[25] Dr. Oluwadamilola T. Oladeru,[26] Dr. Homer Venters,[27] and the faculty at Johns Hopkins schools of nursing, medicine, and public health[28] strongly caution that incarcerated people are particularly vulnerable to the virus and more likely to face serious, even grave, harm due to the COVID-19 pandemic. The CDC has also identified prisons as especially susceptible to rapid outbreaks of infection due to close person-to-person contact among large, confined populations.

---

[23] Kelan Lyons, *Elderly Prison Population Vulnerable to Potential Coronavirus Outbreak*, CONNECTICUT MIRROR (Mar. 11, 2020), https://cutt.ly/BtRSxCF.

[24] Craig McCarthy & Natalie Musumeci, *Top Rikers Doctor: Coronavirus 'Storm is Coming,'* NEW YORK POST (Mar. 19, 2020), https://cutt.ly/ptRSnVo.

[25] Marc F. Stern, MD, MPH, *Washington State Jails Coronavirus Management Suggestions in 3 "Buckets,"* WASHINGTON ASSOC. OF SHERIFFS & POLICE CHIEFS (Mar. 5, 2020), https://cutt.ly/EtRSm4R.

[26] Oluwadamilola T. Oladeru, et al., *What COVID-19 Means for America's Incarcerated Population – and How to Ensure It's Not Left Behind* (Mar. 10, 2020), https://cutt.ly/QtRSYNA.

[27] Madison Pauly, *To Arrest the Spread of Coronavirus, Arrest Fewer People*, MOTHER JONES (Mar. 12, 2020), https://cutt.ly/jtRSPnk.

[28] Letter from Faculty at Johns Hopkins School of Medicine, School of Nursing, and Bloomberg School of Public Health to Hon. Larry Hogan, Gov. of Maryland (Mar. 25, 2020), https://cutt.ly/stERiXk.

---

**PLAINTIFFS' CONSOLIDATED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**    **PAGE 11 OF 26**

52.     Among the specific recommendations from the CDC for mitigating the risk of COVID-19—tailored to the prison realities—is the implementation of distancing strategies to increase physical space between incarcerated people—"ideally 6 feet between all individuals, *regardless of symptoms.*"[29] According to the CDC, the recommended distancing strategy includes reassigning and/or rearranging bunks to provide more space (ideally six feet or more in all directions), enforcing increased space between people in common areas, staggering recreation times, and staggering meals.[30] The CDC also notes that "if group activities are discontinued, it will be important to identify alternative forms of activity to support the mental health of incarcerated/detained persons."[31]

53.     The CDC also recommends, among other things: (1) individually quarantining and medically monitoring close contacts of confirmed COVID-19 cases—including testing; (2) daily temperature checks in housing units where COVID-19 cases have been identified; (3) face mask requirements for all individuals showing symptoms of COVID-19; (4) immediately placing symptomatic individuals into individual medical isolation that is "distinct from punitive solitary confinement" and ensuring that they "receive[] regular visits from medical staff"; (5) actively encouraging staff to stay home when sick; and (6) frequent and thorough cleaning and disinfection of surfaces, objects, and areas.[32]

## III.     Defendants' Actions Have Caused COVID-19 to Spread Rapidly, Endangering Lives of Inmates, Including Plaintiffs in this Suit.

54.     A crisis at Carswell continues to threaten the lives, health, and safety of incarcerated people and staff because Defendants have not taken adequate measures to control the spread of the

---

[29] *Interim Guidance*, *supra* note 19.
[30] *Id.*
[31] *Id.*
[32] *Id.*; *see also COVID-19 in Correctional and Detention Facilities*, *supra* note 19, at 588.

**PLAINTIFFS' CONSOLIDATED COMPLAINT FOR                                              PAGE 12 OF 26
INJUNCTIVE AND DECLARATORY RELIEF**

virus that causes COVID-19. Although the risk of COVID-19 is generally higher in facilities where people reside in close quarters, the risk is especially acute at Carswell, which is home to one of two federal medical facilities for women in the Country, and, consequently, a large number of medically vulnerable people who face a heightened risk of suffering severe illness and/or death from COVID-19.

55.    The BOP has the power to undertake measures that will protect prisoners from harm, including implementing appropriate practices for both prisoners and staff such as testing, contact tracing, quarantine, isolation, physical distancing, cleaning, provision of personal protective equipment, medical care, and release to home confinement or compassionate release. Defendants, however, have deliberately been indifferent to the risks faced by the women in their custody, despite knowing the harm that is being caused and how to prevent the same.

56.    Seven months after the first documented cases of COVID-19 at Carswell, the virus spread widely through Carswell's population, endangering hundreds of lives.[33] By way of example, 725 women out of 1,304 total inmates at Carswell have been infected with COVID-19, and six of those women died.[34] Carswell is suffering once again from a widespread outbreak at its facility, with currently 153 inmates testing positive for COVID-19.[35]

---

[33] *COVID-19 Outbreak Reported at Fort Worth Federal Medical Prison*, ASSOCIATED PRESS (July 21, 2020, 10:10 PM), https://www.nbcdfw.com/news/coronavirus/covid-19-outbreak-reported-at-fort-worth-federal-medical-prison/2410816/.; *See also* Keri Blakinger and Joseph Neff, *Thousands of sick federal prisoners sought release as Covid-19 spread. Nearly all were denied.*, NBC NEWS (Oct. 7, 2020, 5:00 AM), https://www.nbcnews.com/news/us-news/thousands-sick-federal-prisoners-sought-release-covid-19-spread-nearly-n1242193.

[34] Kaley Johnson, *Women's prison in Fort Worth again 'full of COVID,' 2 die from virus at men's prison*, FORT WORTH STAR-TELEGRAM (Jan. 24, 2021), https://www.star-telegram.com/news/local/crime/article248735465.html; Keri Blakinger and Joseph Neff, *Thousands of sick federal prisoners sought release as Covid-19 spread. Nearly all were denied.*, NBC NEWS (Oct. 7, 2020, 5:00 AM), https://www.nbcnews.com/news/us-news/thousands-sick-federal-prisoners-sought-release-covid-19-spread-nearly-n1242193

[35] COVID-19 Coronavirus, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Feb. 8, 2021).

57.    The women at Carswell are packed into crowded dormitories, small cells, and narrow hallways. They cannot physically distance themselves from others or self-quarantine. They cannot ensure that others are effectively quarantined from them if they are infected. Instead, they must sleep within a few feet of one another, use communal bathroom facilities, and line up close together several times a day for food and medicine.

58.    Carswell's healthcare "system" is grossly inadequate to treat sick women in its custody, and specifically those with disabilities, including pre-existing medical conditions that make them especially vulnerable to COVID-19. Making matters worse, it has inadequate infection surveillance, testing, quarantine, and isolation practices. What is more, many people with serious medical conditions unrelated to COVID-19 have not received necessary treatment.

59.    Defendants are well aware of the conditions at Carswell, the extreme threat they pose, and the necessary measures that must be implemented to protect the medically vulnerable and disabled prisoners incarcerated there. Yet Defendants have failed to take critical steps to address the crisis.

60.    Testing for COVID-19 at Carswell has not only been inadequate, it has been deliberately withheld. In that regard, Defendant Carr – the Warden of Carswell – has directed the medical staff at Carswell to stop testing inmates for COVID-19 in order to keep the number of cases down. Currently, the BOP is reporting that 153 women are positive for COVID-19, but because of the choice to refrain from testing, the true number of infected people at Carswell is presently unknown.[36]

61.    Upon information and belief, the medical staff at Carswell have pleaded to Warden Carr that they refrain from mass movement of the inmates, as it is worsening the conditions.

---

[36] COVID-19 Coronavirus, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Feb. 8, 2021).

Warden Carr has ignored the advice of medical staff and has disobeyed the Regional Office's protocol. Further, Warden Carr denied or failed to obtain permission from the Regional Office of the BOP to order the mass move of inmates, which is against the BOP protocol.[37]

62.    Crowded spaces make the situation more dire. It is impossible for the women incarcerated at Carswell to physically distance themselves from one another in accordance with CDC guidelines. Without the ability to physically distance from one another, medically vulnerable people incarcerated at Carswell, including Plaintiffs in this case, remain at extraordinary risk of infection, serious illness, and death from COVID-19.

63.    When people do get sick with COVID-19, treatment is almost non-existent. Moreover, Defendants have forced COVID-positive and COVID-negative incarcerated persons to continue sleeping, receiving meals, picking up medications, and conducting other day-to-day activities in close proximity to one another without the ability to physically distance.

64.    Carswell has denied Plaintiffs access to hand sanitizer, gloves, and proper personal protective equipment. Carswell inmates are given only one cloth mask of which has not been replaced or exchanged for a clean mask in approximately seven months. Plaintiffs are then required to wash their own mask but are not given a temporary mask to wear while washing. Moreover, Plaintiffs are frequently denied soap making it impossible to follow CDC guidelines. Even when soap is provided, it is watered down and Plaintiffs are punished if they use too much.

65.    Carswell has enforced "lockdowns" that have prevented women from participating in activities that are vital to the women's' mental and physical health. Specifically, at various times women have been denied access to the outdoors for three months at a time.

---

[37] [37] Keri Blakinger and Joseph Neff, *Thousands of sick federal prisoners sought release as Covid-19 spread. Nearly all were denied.*, NBC NEWS (Oct. 7, 2020, 5:00 AM), https://www.nbcnews.com/news/us-news/thousands-sick-federal-prisoners-sought-release-covid-19-spread-nearly-n1242193

### A.    Defendants have failed to take even the most basic measures to prevent the spread of the virus.

66.    Defendants have not ensured adequate cleaning or disinfecting of living spaces and common-use equipment, such as bathroom facilities, phones, and computers. According to CDC guidelines, to prevent the spread of COVID-19, "surfaces and objects that are frequently touched," such as "doorknobs, light switches, sink handles, countertops, toilets, toilet handles, recreation equipment, kiosks, telephones, and computer equipment," should be cleaned and disinfected "several times a day."[38] However, despite clear guidance from the CDC, Defendants have failed to clean and disinfect Carswell adequately even though it houses medically vulnerable people.

67.    The women at Carswell are unable to meet their basic hygiene needs. At least 286 women have been without feminine hygiene products for several days at a time, and they have been forced to live in the same dirty clothes and bedding for at least 18 days in a row–sometimes longer. Inability to maintain basic hygiene contributes to the spread of COVID-19 and also makes the women more vulnerable to infection.

68.    Defendants have failed to take the necessary steps to address the severe risks faced by the women at Carswell. Despite direction from the U.S. Attorney General months ago to expeditiously consider medically vulnerable people for home confinement or other release, Defendants continue to oppose motions for compassionate release made by medically vulnerable people.[39] They have also failed to make other arrangements within the facility to allow for adequate physical distancing, in particular for people who are more vulnerable due to age, medical condition, or disability. Defendants have failed to implement effective isolation, quarantine,

---

[38] *Interim Guidance*, supra note 19.

[39] Keri Blakinger and Joseph Neff, *Thousands of sick federal prisoners sought release as Covid-19 spread. Nearly all were denied.*, NBC News (Oct. 7, 2020, 5:00 AM), https://www.nbcnews.com/news/us-news/thousands-sick-federal-prisoners-sought-release-covid-19-spread-nearly-n1242193

---

**PLAINTIFFS' CONSOLIDATED COMPLAINT FOR**                                    **PAGE 16 OF 26**
**INJUNCTIVE AND DECLARATORY RELIEF**

testing, screening, hygiene, and disinfecting policies or meaningfully modify movement protocols for staff and incarcerated people, thereby increasing the risk inmates will contract COVID-19 and suffer serious illness or death.

69.    These conditions are well-known to Defendants, as are the steps they must take to accommodate prisoners with disabilities and prevent constitutional violations.

**B.    Defendants have failed to use the tools available to them to reduce the population at Carswell.**

70.    Defendants know the risk to incarcerated people at Carswell but have not taken any of the recommended or essential measures to address the risks, including making reasonable accommodations for inmates with disabilities to allow them to participate in everyday activities without placing them at increased risk of contracting the deadly disease.

71.    Failing to adequately respond to the deadly virus ravaging Carswell constitutes deliberate indifference to Plaintiffs' health and safety in violation of the Eighth Amendment.

72.    Because of the severity of the threat posed by COVID-19 and its proven ability to rapidly spread through a correctional setting, public health experts recommend the rapid release from custody of those inmates that meet the requirements and are most vulnerable to COVID-19. Release protects the people with the greatest vulnerability and also mitigates risks for people in prison and the broader community. Further it also reduces the burden on the region's health care infrastructure.

73.    Despite the fact that BOP officials have been instructed to transfer people to home confinement, Defendants have opposed such measures, increasing the number of inmates at Carswell, thereby increasing the risk of exposure. A court order is therefore necessary to provide adequate care that does not violate their Constitutional rights.

**IV.    Defendants Have Violated Section 504 of the Rehabilitation Act.**

74.    Defendants' actions and inactions in response to the COVID-19 pandemic not only violate Plaintiff's Eighth Amendment Rights, but they also violate Section 504 of the Rehabilitation Act. In particular, Defendants have discriminated against people with disabilities by failing to make reasonable accommodations and by implementing facially neutral policies that affect people with disabilities more harshly than those without disabilities.

75.    Apart from age, Body Mass Index, and a history of smoking, all conditions that increase risk for COVID-19 complications or death—including but not limited to lung conditions, asthma, heart conditions, diabetes, kidney disease, liver disease, HIV, immune dysfunction, autoimmune disorders, cancer treatment, and history of organ or bone marrow transplantation—**are disabilities under Section 504 of the Rehabilitation Act**. As one of two of the nation's federal medical facilities for women, most, if not all, of Carswell's inmates have a qualifying disability under Section 504 of the Rehabilitation Act.

76.    The Rehabilitation Act imposes an affirmative obligation on all covered entities, such as Carswell, to ensure that their policies, practices, and procedures are accessible to people with disabilities, including providing reasonable modifications in order to give people with disabilities an equal opportunity to benefit from the covered entity's programs, services, and activities.[40] Defendants, however, have failed to make modifications to ensure that individuals with disabilities can benefit from Carswell's programs, services, and activities on an equal basis as people without disabilities who are incarcerated at Carswell. To access programs, services, and activities at Carswell, people with disabilities are required to place themselves at a higher risk of

---

[40] *A Guide to Disability Rights Laws,* U.S. Dep't of Justice: Civil Rights Division (Feb. 2020), https://www.ada.gov/cguide.htm (last visited Feb. 8, 2021) ("[Public entities] are required to make reasonable modifications to policies, practices, and procedures where necessary to avoid discrimination.").

suffering serious medical harm or death as a result of contracting COVID-19 than people without disabilities. Further, Defendants have discriminated against people with disabilities by managing Carswell in a manner that affects persons with disabilities more harshly than those who do not.

77.    Incarcerated people at Carswell who have any of these conditions are medically vulnerable people with disabilities protected by the Rehabilitation Act, in addition to being protected by the constitutional provisions that protect all incarcerated people who are medically vulnerable to COVID-19 complications or death. Some of their most basic rights include the following:

- A right to healthcare, which includes the provision of medication. As described above, in order to receive medication, people incarcerated at Carswell must stand in a pill line, where it is impossible to physically distance. Because of their disability, Plaintiffs with disabilities face a greater risk of suffering serious symptoms from COVID-19 and requiring hospitalization or death than do other people at Carswell. Defendants have not made modifications to reduce the risk to incarcerated people with disabilities to enable them to enjoy the benefits of healthcare on an equal basis with those who do not have disabilities. Further, the method of administration of the provision of medication disparately impacts people with disabilities, as it puts them at higher risk of death than those without disabilities.

- A right to food. Yet people with disabilities incarcerated at Carswell, including Plaintiffs, cannot receive meals without facing a greater risk of serious medical harm or death from COVID-19 than people without disabilities. Defendants have not made modifications to reduce the risk to incarcerated people with disabilities to

enable them to enjoy the benefits of food on an equal basis with those who do not have disabilities. Further, the method of administration of the provision of food disparately impacts people with disabilities, as it puts them at higher risk of death than those without disabilities.

- A right to adequate housing. Yet people with disabilities incarcerated at Carswell, including Plaintiffs, cannot live in their assigned housing without facing a greater risk of serious medical harm or death from COVID-19 than people without disabilities. Defendants have not made modifications to reduce the risk to incarcerated people with disabilities to enable them to enjoy the benefits of housing on an equal basis with those who do not have disabilities. Further, the method of administration of housing arrangements disparately impacts people with disabilities, as it puts them at higher risk of death than those without disabilities.

78.    The Rehabilitation Act also prohibits covered entities from using methods of administration that defeat or impair the accomplishment of the objectives of the covered entity's program. In other words, the Act's purpose is to provide safety, care, and protection for individuals in its custody.[41]

79.    All Plaintiffs, including those with disabilities, have a right to safekeeping, care, and protection while at Carswell. Defendants, however, have deliberately failed to establish methods of administration that protect individuals with disabilities from discrimination.

80.    As a result of Defendants' failures to make reasonable modifications, including release, and their failure to establish a non-discriminatory method of administering Carswell, individuals with disabilities are being denied the benefits of the Act's safety, care, and protection

---

[41] 18 U.S.C. §§ 4042(a)(2)–(3).

program and are being disparately impacted by the rapid spread of COVID-19 throughout Carswell.

81.    The modifications sought are reasonable and would impose no fundamental alteration on BOP.

## FIRST CAUSE OF ACTION

### Discrimination on the Basis of Disability in
### Violation of Section 504 of the Rehabilitation Act of 1973

82.    Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

83.    Section 504 of the Rehabilitation Act states that "no otherwise qualified individual with a disability in the United States . . . shall, solely by reason of [] disability, be excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). The regulations implementing Section 504 of the Rehabilitation Act require that entities receiving federal financial assistance avoid unnecessary policies, practices, criteria or methods of administration that have the effect of discriminating against persons with disabilities. 28 C.F.R. § 41.51(b)(3)(i).

84.    Section 504 forbids not only facial discrimination against individuals with disabilities, but also requires that executive agencies such as BOP alter their policies and practices to prevent discrimination on the basis of disability. Reasonable modifications are required unless those modifications would create a "fundamental alteration" of the relevant program, service, or activity, or would impose an undue hardship. *See Sch. Bd. of Nassau Cty., Fla. v. Arline*, 480 U.S. 273, 288 n.17 (1987); *Alexander v. Choate*, 469 U.S. 287, 300 (1985); *see also* 28 C.F.R. § 35.130(b)(7) ("A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability,

unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.").

85.     Defendants are final policymakers for, or in the case of Defendant BOP is itself, an executive agency within the meaning of 29 U.S.C. § 794(a).

86.     Plaintiffs are individuals with disabilities for the purposes of the Rehabilitation Act, 42 U.S.C. § 12012, 29 U.S.C. § 705(20)(B). As people held at Carswell, they are "qualified" for the programs, services, and activities being challenged herein.

87.     Defendants are violating Section 504 of the Rehabilitation Act by failing to make the reasonable modifications necessary to ensure equal access to programs, services, and activities for people with disabilities who face high risk of complications or death in the event of COVID-19 infection.

88.     Plaintiffs at Carswell are under the custody and control of Defendants and are not able to take steps to protect themselves from the spread of the virus. BOP has a duty to provide safety, care, and protection to Plaintiffs, including those with disabilities. Defendants have not provided reasonable accommodations. As COVID-19 continues to spread at Carswell, the already dangerous conditions at Carswell are only exacerbated further.

89.     Defendants are aware that exposure to COVID-19 could be harmful or deadly to Plaintiffs with disabilities and have failed to protect them.

90.     Defendants have failed to provide reasonable accommodations, including the release of persons with disabilities, to mitigate these significant risks, which continuously subject Plaintiffs to a grave and serious risk of harm from serious illness, permanent injury, or death.

91.     Defendants have also enacted policies and procedures that deny Plaintiffs access to necessary medical care, which further subject Plaintiffs to a grave and serious risk of harm from serious illness, permanent injury, or death.

92.     Section 504 forbids not only facial discrimination against individuals with disabilities, but also any policies or practices that have a disparate impact on disabled individuals. *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52, 124 <u>S.Ct</u>. 513, 157 <u>L.Ed.2d</u> 357 (2003). "[A] facially neutral practice may be discriminatory if it 'fall[s] more harshly on one group than another.'" *Id*.

93.     Defendants' failure to protect Plaintiffs with disabilities from these conditions by releasing prisoners and otherwise taking additional measures to ensure they are not forced to take on greater risk of serious injury or death than other people incarcerated at Carswell to access programs, services, and benefits constitutes discrimination under Section 504 of the Rehabilitation Act.

## SECOND CAUSE OF ACTION

### Unconstitutional Conditions of Confinement
### in Violation of the Eighth Amendment to the U.S. Constitution

94.     Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

95.     The Eighth Amendment guarantees incarcerated persons the right to necessary and adequate medical care, and to be free from cruel and unusual punishment. *See* U.S. Const., amend. VIII. As part of that right, the government cannot subject incarcerated persons to a substantial risk of serious harm to their health and safety. *See, e.g., Farmer v. Brennan,* 511 U.S. 825, 828 (1994); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

96.     Plaintiffs at Carswell are under the custody and control of Defendants and are not able to take steps to protect themselves from the spread of the virus. Defendants have not provided

adequate protections, and COVID-19 continues to spread at Carswell, the already deplorable conditions at Carswell are only exacerbated further.

97.    Defendants are aware of these conditions, which were and are obvious throughout Carswell.

98.    Defendants know of and have disregarded an excessive risk to health and safety.

99.    Defendants have failed to take reasonable steps, including the release of medically vulnerable persons, to mitigate these significant risks, which continuously subject Plaintiffs to a substantial risk of harm from serious illness, permanent injury, or death.

100.    Defendants have also failed to provide adequate medical care and have taken affirmative steps to deny Plaintiffs access to necessary medical care, which further subjects Plaintiffs to a substantial risk of harm from serious illness, permanent injury, or death.

101.    Defendants' failure to protect Plaintiffs from these conditions by releasing prisoners and otherwise remedying the conditions of confinement constitutes deliberate indifference to the health, safety, and serious medical needs of Plaintiffs, thereby establishing a violation of the Eighth Amendment to the United States Constitution.

102.    Federal courts have inherent equitable authority to order injunctive and declaratory relief to remedy violations of the Constitution by federal actors. *Armstrong v. Exceptional Child Ctr., Inc.,* 575 U.S. 320, 327 (2015).

### REQUEST FOR RELIEF

Wherefore, Plaintiffs respectfully request that the Court order the following relief:

A.    Enter a declaratory judgment that Carswell's policies and practices violate Plaintiffs' Eighth Amendment right against cruel and unusual punishment;

B.    Enter a declaratory judgment that Carswell's policies and practices violate Section 504 of the Rehabilitation Act with respect to the Plaintiffs with disabilities;

C.   Order Defendants to create and implement a mitigation plan for prevention of COVID-19 that is consistent with CDC guidelines, overseen by a qualified public health expert, and provides appropriate and reasonable accommodations to those with disabilities.

D.   Order Defendants to provide all necessary and appropriate healthcare to ensure that the needs of individuals incarcerated at Carswell are being met, including continued attention to non-COVID-19 related medical needs.

E.   Establish a process to identify all incarcerated persons who are appropriate for release on home confinement, furlough or other release mechanisms, and order Defendants to release, without quarantining at Carswell, all persons identified through that process as appropriate for release; and

F.   Any further relief that this Court deems just, necessary, or appropriate.

Respectfully submitted this 21st day of April, 2021.

Respectfully submitted,

By: */s/ Lauren Zang*

**Jay K. Wieser**
State Bar No. 24060826
jwieser@jw.com
**Edwin Buffmire**
State Bar No. 24078283
ebuffmire@jw.com
**Lindsey Marsh Brown**
State Bar No. 24087977
lbrown@jw.com
**Gracie Garcia**
State Bar No. 24093931
ggarcia@jw.com
**Lauren Zang**
State Bar No. 24110768
lzang@jw.com
**Lauren Ceckowski**
State Bar No. 24111231
lcekowski@jw.com
**JACKSON WALKER LLP**
2323 Ross Avenue
Suite 600
Dallas, Texas 75201
(214) 953-6000
(214) 953-5822 – Fax

**James P. George**
State Bar No. 07805435
pgeorge@law.tamu.edu
**Texas A&M University**
**School of Law / Legal Clinic**
1515 Commerce Street
Fort Worth, Texas 76102
(817) 212-4120

**ATTORNEYS FOR PLAINTIFFS**

28091195

---