IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

_____

| | |
|---|---|
| SHELLY MIXON, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 4:20-CV-854-P (consolidated action) |
| WARDEN CARR, FMC-Carswell, et al., | |
| Defendants. | |

## <u>DEFENDANTS' MOTION TO DISMISS</u>

PRERAK SHAH
Acting United States Attorney

Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:  214-659-8626
Facsimile:   214-659-8807
brian.stoltz@usdoj.gov

Attorneys for Defendants Michael Carr
(in his official capacity as Warden of
Federal Medical Center, Carswell)
and Federal Bureau of Prisons

**Table of Contents**

I.    Introduction ......................................................................................................... 1

II.   Background........................................................................................................... 2

III.  Legal Standards ................................................................................................... 4

IV.   Argument and Authorities ................................................................................... 5

      A.    Widespread vaccine availability has rendered moot all of Plaintiffs'
             claims based on allegedly dangerous conditions of confinement
             related to COVID-19. ................................................................................... 5

      B.    Plaintiffs fail to state any claim under section 504 of the
             Rehabilitation Act................................................................................... 10

      C.    Plaintiffs have not established jurisdiction for their Eighth
             Amendment claim and also fail to state any claim for relief. .................... 15

      D.    Plaintiffs' other miscellaneous allegations do not support any cause
             of action................................................................................................... 20

V.    Conclusion.......................................................................................................... 21

# Table of Authorities

## Cases

*Acha v. Wolf*,
No. 20-1696, 2021 WL 537101 (W.D. La. Jan. 28, 2021)...................................... 11

*Acha v. Wolf*,
No. 20-1696, 2021 WL 536243 (W.D. La. Feb. 12, 2021) .................................... 11

*Arawole v. Hiemanway*,
No. 4:04-CV-506-Y, 2005 WL 659133 (N.D. Tex. Mar. 22, 2005) ...................... 11

*Arizonans for Official English v. Arizona*,
520 U.S. 43 (1997) .............................................................................. 6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................ 5

*Ball v. LeBlanc*,
792 F.3d 584 (5th Cir. 2015) .............................................................. 17

*Bauer v. Texas*,
341 F.3d 352 (5th Cir. 2003) ............................................................... 7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................ 5

*Cambranis v. Pompeo*,
No. 5:19-CV-238, 2020 WL 1447380 (W.D. Tex. Mar. 24, 2020) ...................... 16

*Carbe v. Lappin*,
492 F.3d 325 (5th Cir. 2007) ............................................................. 20

*City of Clinton, Ark. v. Pilgrim's Pride Corp.*,
632 F.3d 148 (5th Cir. 2010) ......................................................... 5, 14

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) ...................................................................... 7, 8, 9

*Cooper v. Sheriff, Lubbock Cty., Tex.*,
929 F.2d 1078 (5th Cir. 1991) ............................................................ 4

*Domino v. Tex. Dep't of Criminal Justice*,
239 F.3d 752 (5th Cir. 2001) ............................................................ 17

*Edwards v. Johnson*,
    209 F.3d 772 (5th Cir. 2000) ................................................................. 4

*Farmer v. Brennan*,
    511 U.S. 825 (1994) ................................................................. 17, 19, 20

*F.D.I.C. v. Meyer*,
    510 U.S. 471 (1994) ................................................................. 15

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000) ................................................................. 7

*Glenewinkel v. Carvajal*,
    No. 3:20-CV-2256-B, 2021 WL 2952833 (N.D. Tex. July 14, 2021) ............. 16, 17

*Helling v. McKinney*,
    509 U.S. 25 (1993) ................................................................. 17

*Herndon v. Bureau of Prisons*,
    No. 4:20-CV-1129-P, 2021 WL 3036950 (N.D. Tex. July 19, 2021) ................... 11

*Himmel v. Upton*,
    No. 4:18-CV-804-O, 2019 WL 1112923 (N.D. Tex. Mar. 11, 2019) ................... 21

*Home Builders Ass'n of Miss., Inc. v. City of Madison*,
    143 F.3d 1006 (5th Cir. 1998) ................................................................. 5

*Hudson v. McMillian*,
    503 U.S. 1 (1992) ................................................................. 17

*In re Katrina Canal Breaches Litig.*,
    495 F.3d 191 (5th Cir. 2007) ................................................................. 5

*Lane v. Pena*,
    518 U.S. 187 (1996) ................................................................. 11, 12, 13

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ................................................................. 6

*Martinez v. CoreCivic*,
    No. 20-1309, 2021 WL 2550319 (D.N.M. June 22, 2021) ................................. 9

*Ramming v. United States*,
    281 F.3d 158 (5th Cir. 2001) ................................................................. 5

*Rhodes v. Chapman*,
 452 U.S. 337 (1981) ............................................................................ 17

*Roark v. Flanery*,
 No. 5:12-CV-60, 2014 WL 4447451 (E.D. Tex. Sept. 9, 2014) ........................... 11

*Spann ex rel. Hopkins v. Word of Faith Christian Ctr. Church*,
 589 F. Supp. 2d 759 (S.D. Miss. 2008) .................................................. 15

*St. Tammany Parish, ex rel. Davis v. FEMA*,
 556 F.3d 307 (5th Cir. 2009) ................................................................. 15

*Taylor v. Stevens*,
 946 F.3d 211 (5th Cir. 2019) ................................................................. 17

*Toure v. Huron*,
 No. SA-20-CV-1036-JKP, 2021 WL 75698 (W.D. Tex. Jan. 8, 2021) ........... 11, 14

*United States v. Gentry*,
 No. 5:03-5003305, 2020 WL 2131001 (W.D. La. May 5, 2020) ......................... 21

*United States v. Miller*,
 No. 2:17-CR-15-D, 2020 WL 2514887 (N.D. Tex. May 15, 2020) ..................... 21

*United States v. Poupart*,
 No. 3:11-CR-116 (JBA), 2021 WL 917067 (D. Conn. Mar. 10, 2021) ............. 9, 20

*United States v. Testan*,
 424 U.S. 392 (1976) ............................................................................ 15

*U.S. Parole Comm'n v. Geraghty*,
 445 U.S. 388 (1980) .............................................................................. 6

*Valentine v. Collier*,
 993 F.3d 279 (5th Cir. 2021) ................................................... 19, 19–20

*Webber v. Fed. Bureau of Prisons*,
 No. 6:03-CV-79-C, 2005 WL 176122 (N.D. Tex. Jan. 27, 2005) ....................... 11

*Whitmore v. Arkansas*,
 495 U.S. 149 (1990) .............................................................................. 7

*Wilkins v. Wolf*,
 No. 1:20-CV-2450, 2021 WL 2376678 (M.D. Pa. June 10, 2021) ...................... 18

*Williamson v. Tucker*,
    645 F.2d 404 (5th Cir. 1981) .................................................................. 3

*Williamson v. U.S. Dep't of Agric.*,
    815 F.2d 368 (5th Cir. 1987) ................................................................ 15

## Statutes and Regulations

28 C.F.R. § 39.170 .................................................................................... 13

28 U.S.C. § 1331 ....................................................................................... 16

29 U.S.C. § 794 ..................................................................................... 3, 10

29 U.S.C. § 794(a) ................................................................... 10, 11, 12–13

29 U.S.C. § 794a ...................................................................................... 11

29 U.S.C. § 794a(a)(2) ............................................................................. 12

42 U.S.C. § 1997e(a) ............................................................................... 20

## I.      Introduction

Plaintiffs in this consolidated case are federal inmates who are (or were) incarcerated at Federal Medical Center, Carswell (FMC Carswell).  In a two-count consolidated complaint, they seek declaratory and injunctive relief against the Federal Bureau of Prisons (BOP) and the FMC Carswell warden, based on allegations that the conditions of Plaintiffs' confinement at FMC Carswell—principally relating to safety protocols during the COVID-19 pandemic—violate section 504 of the Rehabilitation Act of 1973 and the Eighth Amendment of the Constitution.

But as explained herein, Plaintiffs' consolidated complaint has been rendered moot in its entirety by changed circumstances.  COVID-19 vaccines are now widely available, and of the Plaintiffs still in custody at FMC Carswell, *every Plaintiff but one* has now been fully vaccinated against COVID-19—and the one unvaccinated Plaintiff was offered a vaccine but refused it.

Regardless of mootness, Plaintiffs' claims also fail for other independent reasons. Plaintiffs fail to state any claim for relief under the Rehabilitation Act because the BOP is not considered a program or activity governed by section 504 of that statute and, even if it were, Plaintiffs do not allege any facts showing a section 504 violation.  And Plaintiffs' Eighth Amendment claim likewise fails.  Plaintiffs have not established a jurisdictional basis for this claim, and their allegations also fail to state any claim for relief because no facts showing subjective deliberative indifference have been pleaded.

For these reasons, and as further explained below, Defendants request that the Court dismiss Plaintiffs' consolidated complaint under Rule 12(b)(1) and (6).

## II.    Background

This action was commenced on August 3, 2020 by the filing of a single *pro se*

complaint submitted by 72 individual inmates at FMC Carswell.  (*See* Doc. 7 at 4

(discussing the procedural history of the case); *see also* Doc. 1 (original complaint).)

Plaintiffs challenged the constitutionality of the conditions of their confinement at FMC

Carswell and raised numerous claims relating to the COVID-19 pandemic (e.g., claims

challenging Plaintiffs' possible exposure to the virus, facility sanitation, and living

conditions).  (Doc. 7 at 4.)  Noting concerns with multi-plaintiff prisoner litigation,

including the need for each individual prisoner to sign her own pleadings, the possibility

of coercion among prisoners, and potential security issues, the Court severed the action

into separate cases for each individual plaintiff and ordered each to file her own

complaint.  (Doc. 7 at 6–7.)

After amended complaints were filed, the Court appointed *pro bono* counsel and

provided an opportunity for counsel to review the cases and file updated pleadings as

appropriate, and also to file a motion to consolidate if counsel viewed that as appropriate.

(*See* Doc. 21.)  Counsel did file such a motion, (Doc. 22), which the Court granted, (Doc.

32), and a consolidated complaint was then filed on behalf of 33 Plaintiffs, (Doc. 33).

Notably, although FMC Carswell is a medical facility, it also houses "general population"

inmates who are not designated to FMC Carswell because of any medical issue, but

rather for other reasons which might include proximity to the inmate's home, the

inmate's security classification, or program availability.  The 33 Plaintiffs on whose

behalf the consolidated complaint was filed are (or were) all such inmates housed in

*Defendants' Motion to Dismiss – Page 2*

general-population housing units at FMC Carswell (with the exception of three Plaintiffs who live on medical units not because of any medical designation of their own, but rather because they have work-detail assignments as sanitation and inmate nursing assistants). (App.[1] 003.)

In the consolidated complaint, Plaintiffs bring claims under section 504 of the Rehabilitation Act (codified as amended at 29 U.S.C. § 794) and the Eighth Amendment, under theories that they have been exposed to "inadequate and dangerous conditions" at FMC Carswell, primarily in connection with the COVID-19 pandemic.  (Doc. 33, ¶ 1; *see also* Doc. 1, ¶¶ 82–102.)  They seek prospective injunctive relief that would require:  (1) the use of an unspecified "mitigation plan" against COVID-19 at FMC Carswell, to be "overseen by a qualified public health expert"; (2) that "all necessary and appropriate healthcare" be provided to inmates at FMC Carswell; and (3) the release of unspecified inmates after Defendants are required to "[e]stablish a process" to identify inmates who are "appropriate for release on home confinement, furlough or other release mechanisms."  (*See* Doc. 33 at 24 ("Request for Relief" section).)

Notwithstanding that Plaintiffs are seeking prospective relief, the allegations in the consolidated complaint focus principally on events that occurred in 2020 or early 2021. Plaintiffs reference a news report of a COVID-19 outbreak at FMC Carswell in July 2020, for example.  (*See* Doc. 33, ¶ 56 & n.33.)  Citing the BOP's COVID-19 webpage,

---

[1] "App. __" citations refer by page number to the materials in the appendix to this motion.  The Court may consider materials from outside the pleadings in connection with a Rule 12(b)(1) motion.  *See Williamson v. Tucker*, 645 F.2d 404, 412–13 (5th Cir. 1981).

Plaintiffs also allege that there were 153 COVID-19-positive inmates at FMC Carswell as of February 8, 2021. (Doc. 33, ¶ 56 & n.35 (citing Fed. Bureau of Prisons, COVID-19 Coronavirus, www.bop.gov/coronavirus).)

As the Court is no doubt aware, the situation with respect to COVID-19 has changed dramatically since 2020 and early 2021. Although COVID-19 remains a threat (including as new variants emerge), vaccines are now widely available and have proven successful at mitigating the risk and spread of COVID-19. At FMC Carswell, 1,161 inmates have received a full COVID-19 vaccine course as of August 6, 2021.[2] (App. 003.) Of the 33 Plaintiffs in this case, 29 are currently at FMC Carswell[3] and of these, 28 Plaintiffs are now fully vaccinated and the other Plaintiff has been offered a vaccine, but refused it. (App. 002; *see also* App. 004–143 (individual vaccine records for all Plaintiffs).) As of August 6, 2021, there is only one COVID-19-positive inmate at FMC Carswell (who was in quarantine when she was tested and was immediately moved to medical isolation). (App. 003.)

## III.   Legal Standards

Under Rule 12(b)(1), a case is properly dismissed when the court "lacks the

---

[2] FMC Carswell's current inmate population is 1,439. *See* Fed. Bureau of Prisons, FMC Carswell, www.bop.gov/locations/institutions/crw/ (accessed Aug. 9, 2021).

[3] Plaintiffs Ariel Bishop (released on July 2, 2021), Wendy Espinoza (released on May 11, 2021), Eugenia Rowland (transferred to FCI Waseca), and Jessica Chronister (transferred to FCI Tallahassee) are no longer at FMC Carswell. *See* Fed. Bureau of Prisons, Find an Inmate, www.bop.gov/inmateloc/ (search by inmates' names to see current location or release status). In addition to the reasons given for dismissal in this motion, these four Plaintiffs' claims should be dismissed for the additional reason that a prisoner's claim for injunctive relief based on allegedly deficient conditions of confinement becomes moot upon the prisoner's transfer to another facility or release. *See Edwards v. Johnson*, 209 F.3d 772, 776 (5th Cir. 2000); *Cooper v. Sheriff, Lubbock Cty., Tex.*, 929 F.2d 1078, 1081, 1084 (5th Cir. 1991).

statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation omitted). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citation omitted). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* (citation omitted).

A Rule 12(b)(6) motion to dismiss assesses the sufficiency of a complaint, testing whether the plaintiff has pled sufficient facts to state a claim that is plausible on its face. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While "well-pleaded facts" are accepted as true, *id.*, threadbare recitals of the elements of a cause of action or conclusory allegations are not, *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153 (5th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## IV.     Argument and Authorities

The Court should dismiss Plaintiffs' consolidated complaint in its entirety because changed circumstances have rendered this action moot. Additionally, Plaintiffs' claims under section 504 of the Rehabilitation Act and the Eighth Amendment also fail for other independent reasons.

### A.     Widespread vaccine availability has rendered moot all of Plaintiffs' claims based on allegedly dangerous conditions of confinement related to COVID-19.

The Court should dismiss the consolidated complaint in its entirety because Plaintiffs cannot show a presently-occurring injury in fact sufficient to support their

continued standing and personal stake in the litigation.  Put another way, even assuming Plaintiffs were at some point threatened with alleged COVID-19-related injuries of the type referenced in the consolidated complaint, Plaintiffs' claims have by now been rendered moot by changed circumstances.

Standing addresses the question of who may properly bring suit in federal court, and "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  The "irreducible constitutional minimum" of standing requires a plaintiff to show (1) a concrete and particularized injury in fact which is actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the defendant's conduct; and (3) that the injury will likely be redressed by a favorable decision.  *Id.* at 560.

Standing is measured as of the date suit is filed, but the related doctrine of mootness—which has been described by the Supreme Court as "'the doctrine of standing set in a time frame,'" *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980))—comes into play when post-filing events have affected a plaintiff's stake in the litigation.  That is the case here.  To avoid mootness, "'[t]he requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'"  *Id.* (quoting *Geraghty*, 445 U.S. at 397).  Where, as here, a plaintiff is complaining of a defendant's alleged past noncompliance with some legal requirement, "it is the plaintiff's burden to establish standing by demonstrating that, if unchecked by the litigation, the defendant's allegedly wrongful behavior will likely occur or continue,

and that the 'threatened injury [is] certainly impending.'" *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 191 (2000) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

Plaintiffs seek declaratory and injunctive relief under a premise that Defendants failed to adequately protect against the risk of COVID-19 at FMC Carswell.  However, as noted previously, to the extent Plaintiffs make any specific allegations about conditions at FMC Carswell,[4] those allegations focus on events occurring in 2020 or early 2021, such as alleged COVID-19 outbreaks in July 2020 and February 2021.  (*See* pp. 3–4, *supra*; *see also* Doc. 33, ¶ 56.)  Defendants do not agree that any constitutional or statutory rights of Plaintiffs' were ever violated at those or any other times, but even assuming some violation did occur, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief."  *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003) (internal quotation marks and citation omitted).  Instead, to obtain declaratory or injunctive relief based on an alleged past wrong, "a plaintiff must demonstrate either continuing harm or a real and immediate threat of repeated injury in the future."  *Id.* (citation omitted).

For example, in *City of Los Angeles v. Lyons*, 461 U.S. 95, 98 (1983), the Supreme Court considered whether a plaintiff who had been subjected to a chokehold by police had standing to seek equitable relief in the form of (i) a declaration that the use of such

---

[4] Many of the allegations in the consolidated complaint are merely descriptions of COVID-19 itself or its effect generally in a prison environment, without any specific tie-in to FMC Carswell.  (*See* Doc. 33, ¶¶ 39–53.)

chokeholds violated the Constitution and (ii) an injunction against their future use.  The Court explained that the plaintiff would have standing only if he could show that he "would again be stopped for a traffic or other violation in the reasonably near future" and "that strangleholds are applied by the Los Angeles police to every citizen who is stopped or arrested regardless of the conduct of the person stopped."  *Id.* at 108.  Noting that the plaintiff did not claim to have been subjected to a chokehold on any other occasion, the Court found that the "odds" of a repeat occurrence of the allegedly illegal conduct were not "sufficient to make out a federal case for equitable relief."  *Id.*

The same is true with respect to Plaintiffs' claims that their Rehabilitation Act or Eighth Amendment rights were violated at FMC Carswell during earlier periods of the COVID-19 pandemic.  A critical distinction between those past periods of time and the present is that all Plaintiffs who are currently at FMC Carswell have now been fully vaccinated against COVID-19 or have been offered a vaccine but refused to take it.  (*See* App. 002; *see also* App. 004–143.)  According to the Centers for Disease Control and Prevention, the COVID-19 vaccines that Plaintiffs have received (or been offered) are safe and effective at preventing COVID-19 and are effective against severe disease and death from variants of the virus, including the delta variant that is currently circulating. *See* Ctrs. for Disease Control & Prevention, COVID-19, When You've Been Fully Vaccinated, www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated.html (accessed August 5, 2021).  Moreover, COVID-19 infections happen in only a small proportion of people who are vaccinated, and when these infections do occur in vaccinated people, they tend to be mild.  *See id.*  Thus, COVID-19 vaccines are effective

both at preventing COVID-19 infections and at minimizing the adverse effects of such infections that do occasionally occur in vaccinated individuals.

Under these circumstances, Plaintiffs fail to show sufficient "odds" of a threatened injury in connection with another COVID-19 outbreak similar to the outbreaks that Plaintiffs cite in their complaint in 2020 or early 2021, during times prior to widespread vaccination. *See Lyons*, 461 U.S. at 108. Indeed, from reading Plaintiffs' consolidated complaint alone, one would not even know that COVID-19 vaccines exist. Even though the consolidated complaint was filed in June 2021 at a time when Plaintiffs had all been fully vaccinated (or had at least received the opportunity to be vaccinated, but refused), Plaintiffs nowhere even *mention* the availability of COVID-19 vaccines in their pleading. Yet the "opportunity for individually-identifiable inmates to opt to receive the COVID-19 vaccine represents a sea change from their previous COVID-19 infection vulnerability and inability to protect themselves against the virus, even with comorbidities." *United States v. Poupart*, No. 3:11-CR-116 (JBA), 2021 WL 917067, at *1 (D. Conn. Mar. 10, 2021).

The Court is not required to turn a blind eye to reality when assessing whether Plaintiffs' allegations establish a presently-existing injury in fact sufficient to support the existence of jurisdiction at this time. Because they do not, the consolidated complaint should be dismissed. *See also Martinez v. CoreCivic*, No. 20-1309, 2021 WL 2550319, at *7 (D.N.M. June 22, 2021) (finding, with respect to claims filed by pretrial and post-conviction detainees at a county jail, that the "availability of the vaccine at [the jail] also moots this action (and strips standing from all detainees for all future risk-based

coronavirus actions)" and that "the vaccine must smother all attempts by prisoners or pre-trial detainees to request COVID-19-related relief based upon the theory that the risk of infection violates the constitution").

**B.      Plaintiffs fail to state any claim under section 504 of the Rehabilitation Act.**

Section 504 of the Rehabilitation Act, which is codified as amended at 29 U.S.C. § 794, states in pertinent part that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."[5]  29 U.S.C. § 794(a) (quoted by Plaintiffs in the consolidated complaint at Doc. 33, ¶ 83).  Relying on this provision, the first claim in Plaintiffs' consolidated complaint asserts that Defendants have violated section 504 "by failing to make the reasonable modifications necessary to ensure equal access to programs, services, and activities for people with disabilities who face high risk of complications or death in the event of COVID-19 infection."  (Doc. 33, ¶ 87.)

But this claim fails for the simple reason that the BOP does not constitute a "program or activity" under section 504 for purposes of allowing Plaintiffs to bring a

---

[5] Section 504(a) goes on to say "or under any program or activity conducted by any Executive agency or by the United States Postal Service." 28 U.S.C. § 594(a).  However, Plaintiffs do not quote this portion of the statute in their complaint and thus presumably are not relying on it.  Even if they were, the analysis would not change.  Indeed, as explained below, the statute's express inclusion of a reference to an "Executive agency" is telling because the separate section of the Rehabilitation Act that sets out the remedies for a section 504 violation does not create a remedy for section 504 violations in programs or activities conducted by executive agencies, as opposed to programs or activities that merely receive federal financial assistance.

**Defendants' Motion to Dismiss – Page 10**

civil action under that statute.  *See Arawole v. Hiemanway*, No. 4:04-CV-506-Y, 2005 WL 659133, at *2 (N.D. Tex. Mar. 22, 2005) (explaining that "courts have found that the BOP does not fit the definition of 'programs or activities' governed by" section 504); *Webber v. Fed. Bureau of Prisons*, No. 6:03-CV-79-C, 2005 WL 176122, at *9 (N.D. Tex. Jan. 27, 2005) (same); *Roark v. Flanery*, No. 5:12-CV-60, 2014 WL 4447451, at *27 (E.D. Tex. Sept. 9, 2014) (same); *see also Acha v. Wolf*, No. 20-1696, 2021 WL 537101, at *7 (W.D. La. Jan. 28, 2021) ("Courts have precluded federal detainees from bringing Rehabilitation Act claims against the federal agencies housing them."), *report and rec. adopted*, 2021 WL 536243 (W.D. La. Feb. 12, 2021); *Toure v. Huron*, No. SA-20-CV-1036-JKP, 2021 WL 75698, at *5 (W.D. Tex. Jan. 8, 2021) (explaining with respect to a section 504 claim filed by an immigration detainee that "courts across the country—including in this Circuit—have precluded federal detainees from bringing Rehabilitation Act claims against the federal agencies housing them").  As this Court has recently noted, "'the Bureau of Prisons does not fit within the definition of programs or activities governed by . . . Section 504 of the Rehabilitation Act."  *Herndon v. Bureau of Prisons*, No. 4:20-CV-1129-P, 2021 WL 3036950, at *4 (N.D. Tex. July 19, 2021) (quoting *Roark*, 2014 WL 447451, at *27) (internal brackets omitted).

The unavailability of any section 504 claim against Defendants in this action is further confirmed by section 505(a)(2) of the Rehabilitation Act (codified as amended at 29 U.S.C. § 794a), which specifies the remedies available for a violation of section 504. *See Lane v. Pena*, 518 U.S. 187, 192 (1996) (explaining the interplay between sections 504 and 505).  When considering section 505(a)(2), it is important to first recall that the

relevant language of section 504 actually refers to two different types of programs and activities in which disability discrimination is prohibited:  (1) "any program or activity receiving Federal financial assistance" and (2) "any program or activity conducted by any Executive agency or by the United States Postal Service."  29 U.S.C. § 794(a).  The statute thus creates a dividing line between (1) activities conducted by the federal government itself (the latter group in the quoted language above, consisting of any "Executive agency" or the Postal Service) and (2) activities conducted by non-federal entities that are merely recipients of federal funds, such as state or local governments that receive federal funds or other federal grantees.  *See id.*  With respect to the matters complained of by Plaintiffs in this lawsuit, the BOP's activities are clearly those of an "Executive agency" rather than a mere "program or activity receiving Federal financial assistance" (or a provider of funds to some non-federal grantee of this sort).  *See id.*  The BOP is the agency within the Department of Justice charged with carrying out the prison sentences of persons convicted of federal crimes, including Plaintiffs.  It is acting as an "Executive agency" with respect to Plaintiffs, not a federal grantee (or grantor).

Returning to section 505(a)(2) and its specification of the remedies available for a section 504 violation, the Supreme Court noted in *Lane* that section 505(a)(2) creates a statutory remedy only for section 504 violations "'by any recipient of Federal assistance or Federal provider of such assistance.'"  *Lane*, 518 U.S. at 192 (quoting 29 U.S.C. § 794a(a)(2)).  This language is "telling," the Supreme Court found, because it "makes no mention whatsoever" of the other category of activities referred to in section 504, i.e., "program[s] or activit[ies] conducted by any Executive agency."  *Id.* (quoting 29 U.S.C.

§ 794(a)).  For purposes of the claim in *Lane*, which was for money damages, the

Supreme Court found that this language meant that sovereign immunity had not been

waived to authorize a section 504 claim against the government.  *See id.*  For essentially

the same reasons, no right of action would be available to Plaintiffs for injunctive relief

even if they did seek relief under a theory that the BOP is an "Executive agency" under

section 504.  Section 505(a)(2) does not provide any such cause of action against the

government in the circumstances of this case.[6]

Finally, even if BOP were assumed to be subject to a civil action under section

504, Plaintiffs still fail to state any claim for relief under the statute.  "[T]o establish a

prima facie case[7] under the Rehabilitation Act, a plaintiff must show:  '(1) the plaintiff is

an individual with a disability under the Rehabilitation Act; (2) the plaintiff is otherwise

qualified for participation in the program; (3) the plaintiff is being excluded from

participation in, being denied the benefits of, or being subjected to discrimination under

the program solely by reason of his or her disability; and (4) the relevant program or

---

[6] This is not to say that section 504 of the Rehabilitation Act is a dead letter as applied to activities and programs conducted directly by the government.  Section 504(a) directs the head of each agency to promulgate regulations "necessary to carry out" the prohibition on disability discrimination in the programs they conduct.  29 U.S.C. § 794(a).  The Department of Justice has promulgated such a regulation, which allows individuals who believe they have been discriminated against on the basis of a disability in a program or activity conducted by the agency to file an administrative complaint, which then triggers an investigation followed by a formal decision with findings of fact and conclusions of law, from which the complainant has further appeal rights if he or she remains unsatisfied, including the right to a hearing before an administrative law judge.  *See* 28 C.F.R. § 39.170.

[7] To be clear, Defendants are not suggesting that Plaintiffs have an evidentiary burden to establish a prima facie case at this stage of the case, as would occur at the summary-judgment stage under a *McDonnell Douglas*-type analysis.  Defendants are merely quoting this explanation from the caselaw to show what the elements of a section 504 claim are.

**Defendants' Motion to Dismiss – Page 13**

activity is receiving federal financial assistance.'"  *Toure*, 2021 WL 75698, at *5 (quoting

*Spann ex rel. Hopkins v. Word of Faith Christian Ctr. Church*, 589 F. Supp. 2d 759, 764

(S.D. Miss. 2008)).

Here, Plaintiffs' claim fails at the first element because the consolidated complaint

contains no factual allegation establishing that any Plaintiff has a "disability" under the

Rehabilitation Act.  (*See* Doc. 33.)  Instead, the consolidated complaint refers generically

to the BOP's alleged responsibilities toward "people with disabilities," but without

showing that any particular Plaintiff is such a person.  (*See* Doc. 33, ¶ 77; *see also id.*

(stating that "[i]ncarcerated people at Carswell who have any of these conditions are

medically vulnerable people with disabilities protected by the Rehabilitation Act," but not

alleging that any particular Plaintiff is such a person).)  The closest the consolidated

complaint comes to making any factual allegation on the issue of a disability is a

statement in paragraph 86 that "Plaintiffs are individuals with disabilities for the purposes

of the Rehabilitation Act."  (Doc. 33, ¶ 86.)  However, that statement is entirely

conclusory and does not provide any factual support for its conclusion that Plaintiffs are

disabled within the meaning of the Rehabilitation Act.  *See City of Clinton*, 632 F.3d at

153 (explaining that threadbare recitals of the elements of a cause of action or conclusory

allegations do not suffice).  Moreover, the conclusory statement in paragraph 86 is

seemingly inconsistent with a reference elsewhere in the consolidated complaint to "[a]ll

Plaintiffs, including those with disabilities," which seems to concede that not all Plaintiffs

are disabled within the meaning of the Rehabilitation Act.  (*See* Doc. 33, ¶ 79.)  In fact,

Plaintiffs have not pleaded that *any* Plaintiff is so disabled, and thus their consolidated

complaint fails to satisfy the disability element of a section 504 claim.

The consolidated complaint's allegations are similarly deficient with respect to the remaining elements of a section 504 claim. Plaintiffs do not plead facts showing that they have been excluded from participation in, or denied the benefits of, any BOP program or activity on the basis of any alleged disability. Again, there is no specific allegation of even a single attempt by any Plaintiff to participate in some identified activity or program that was unavailable by reason of the Plaintiff's alleged disability. In the absence of any such factual allegations, no claim is stated.

**C.      Plaintiffs have not established jurisdiction for their Eighth Amendment claim and also fail to state any claim for relief.**

In addition to mootness, Plaintiffs' Eighth Amendment claim should be dismissed for several other independent reasons. As an initial matter, Plaintiffs fail to identify any applicable waiver of sovereign immunity in their consolidated complaint. The United States (including its agencies and employees sued in an official capacity) is "immune from suit except as the United States has consented to be sued." *Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 373 (5th Cir. 1987). "[A] waiver of the traditional sovereign immunity cannot be implied but must be unequivocally expressed." *United States v. Testan*, 424 U.S. 392, 399 (1976) (internal quotation marks and citations omitted). Sovereign immunity is "jurisdictional in nature," *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994), and the "[p]laintiff bears the burden of showing Congress's unequivocal waiver of sovereign immunity," *St. Tammany Parish, ex rel. Davis v. FEMA*, 556 F.3d 307, 315 (5th Cir. 2009).

The only jurisdictional statute cited by Plaintiffs in the consolidated complaint is 28 U.S.C. § 1331.  (Doc. 33, ¶ 4.)  But section 1331 "does not waive sovereign immunity" for claims against the government.  *Cambranis v. Pompeo*, No. 5:19-CV-238, 2020 WL 1447380, at *3 (W.D. Tex. Mar. 24, 2020) (internal quotation marks and citations omitted).  "Consequently, it is not enough to merely rely on § 1331 for jurisdiction when suing the United States or its agencies." *Id.*

In a case filed in the Dallas Division on behalf of a group of inmates at another BOP facility, Judge Boyle recently dismissed those plaintiffs' complaint under almost identical circumstances where the plaintiffs were attempting to rely on section 1331 for Eighth Amendment claims against BOP officials.  *See Glenewinkel v. Carvajal*, No. 3:20-CV-2256-B, 2021 WL 2952833 (N.D. Tex. July 14, 2021).  In *Glenewinkel*, the plaintiffs alleged that the BOP had not implemented adequate safety protocols at FCI Seagoville during the COVID-19 pandemic and sought declaratory and injunctive relief essentially identical to the relief sought by Plaintiffs here.  *See id.* at *1 (noting that the *Glenewinkel* plaintiffs were seeking a declaratory judgement that the Eighth Amendment had been violated and a court order requiring the implementation of a "mitigation plan" for COVID-19 and for the provision of certain health care).  Explaining that the plaintiffs' reliance on section 1331 was unavailing because section 1331 "does *not* waive sovereign immunity," Judge Boyle dismissed the plaintiffs' complaint for lack of jurisdiction under Rule 12(b)(1).[8]  *Id.* at *3, *4.  Plaintiffs' consolidated complaint in this Court suffers

---

[8] The *Glenewinkel* plaintiffs also relied on several other statutes (not cited by Plaintiffs here), but Judge Boyle determined that those statutes did not confer jurisdiction either.  *See Glenewinkel*, 2021 WL

from this same defect, and therefore should be dismissed for the same reason.

Plaintiffs also fail to state any claim for relief under the Eighth Amendment. Conditions of imprisonment violate the Eighth Amendment only if they, "alone or in combination . . . deprive inmates of the minimal civilized measures of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  Such necessities include "adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Thus, "extreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

"To be tantamount to the infliction of cruel and unusual punishment, prison conditions must pose 'an unreasonable risk of serious damage' to a prisoner's health—an objective test—and prison officials must have acted with deliberate indifference to the risk posed—a subjective test." *Ball v. LeBlanc*, 792 F.3d 584, 592 (5th Cir. 2015) (quoting *Helling v. McKinney*, 509 U.S. 25, 33–35 (1993)).  The deliberate indifference required to state a constitutional claim "is an extremely high standard to meet," *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001), and prison officials act with such indifference only if they know an inmate faces a substantial risk of serious harm and they disregard that risk by failing to take reasonable measures to alleviate it. *See Farmer*, 511 U.S. at 837; *accord Taylor v. Stevens*, 946 F.3d 211, 221 (5th Cir. 2019).

---

2952833, at *3.  Judge Boyle did grant leave to amend, after noting that the plaintiffs had made arguments about asserting a *Bivens* claim in their response to the defendants' motion to dismiss, but had not actually pleaded such a claim in their complaint.  *See id.* at *3–*4.

Defendants do not dispute that, objectively, COVID-19 presents a serious health risk—both to inmates and to the prison staffers who work in close quarters with them, as well as to the public at large.  But Plaintiffs fail to plead any facts suggesting that Defendants have demonstrated *subjective* deliberate indifference to the risks posed by COVID-19.  To the contrary, Plaintiffs' consolidated complaint cites the BOP's COVID-19 webpage, which details the various preventative steps that the BOP has taken to mitigate the risk of COVID-19 in its facilities.  *See* Fed. Bureau of Prisons, COVID-19 Coronavirus, www.bop.gov/coronavirus (cited in Plaintiffs' consolidated complaint at Doc. 33, ¶ 56 & n.33).[9]  These steps include the use of modified operations plans to limit visitation, maximize social distancing, and prevent congregate gatherings, as well as the use of enhanced medical screenings.  *See id.* ("BOP COVID-19 Modified operations plan" section).  The BOP has also employed widespread COVID-19 testing of inmates (with 118,847 tests completed as of August 6, 2021) and is "committed to making the vaccine available to all staff and inmates who wish to receive it as quickly as possible." *Id.* ("COVID-19 Vaccine implementation" section).  This includes, at FMC Carswell, the full vaccination of 1,161 inmates as of August 6, 2021.  *Id.*

Indeed, unlike the typical deliberate-indifference scenario where prison officials are alleged to have ignored or exacerbated some condition specific to a particular prisoner that has no possible adverse effect on prison officials (such as an illness that the

---

[9] The Court may consider these matters as part of the pleadings and as matters of public record that are subject to judicial notice.  *See Wilkins v. Wolf*, No. 1:20-CV-2450, 2021 WL 2376678, at *6 (M.D. Pa. June 10, 2021) (taking judicial notice of a COVID-19 mitigation plan detailed on a county jail's website).

prisoner is suffering), it would be utterly illogical for prison officials to purposefully disregard the risks of COVID-19 in the prison environment—if only for the simple reason that this would also place the prison officials themselves at an elevated risk given their day-to-day proximity to the prisoners they supervise.

Plaintiffs also fail to state any claim for relief given that they are seeking forward-looking injunctive relief, but their backward-looking allegations fail to plead a *continuing* constitutional violation. Where, as here, prisoners have sued "only for prospective relief" under the Eighth Amendment, there must be a showing that prison officials "'knowingly and unreasonably disregard[ed] an objectively intolerable risk of harm, and that *they will continue to do so*.'" *Valentine v. Collier*, 993 F.3d 279, 282 (5th Cir. 2021) (emphasis added) (quoting *Farmer*, 511 U.S. at 846). Thus, to establish eligibility for a declaratory judgment or an injunction, "'the inmate must demonstrate the continuance of that disregard *during the remainder of the litigation and into the future*.'" *Id.* (emphasis added) (quoting *Farmer*, 511 U.S. at 846). Put another way, inmates may only state a claim to enjoin deliberate indifference "based on prison officials' 'current attitudes and conduct,'" not exclusively based on past behavior. *See id.* (quoting *Farmer*, 511 U.S. at 845).

Plaintiffs' allegations focus exclusively on Defendants' alleged failures in the past in connection with COVID-19 and do not address the current state of affairs in which vaccines are widely available and only one inmate at FMC Carswell is currently COVID-19-positive. Plaintiffs' consolidated complaint does not allege that Defendants' "'current attitudes and conduct'" reflect unconstitutional deliberate indifference. *See Valentine*,

993 F.3d at 282 (quoting *Farmer*, 511 U.S. at 845).  Nor does the consolidated complaint

confront the widespread availability of the COVID-19 vaccine, which represents a "sea

change" from Plaintiffs' (and all persons') previous vulnerability to COVID-19.  *See*

*Poupart*, 2021 WL 917067, at *1.  Under these circumstances, Plaintiffs fail to state any

Eighth Amendment claim for declaratory or injunctive relief.

**D.**    **Plaintiffs' other miscellaneous allegations do not support any cause of action.**

        In addition to discussing alleged deficiencies in Plaintiffs' conditions of

confinement relating to COVID-19, the consolidated complaint also contains a few stray

references to other matters.  However, none of these matters is developed in any

meaningful way as an independent claim and, in any event, none of these allegations

would support any such claim.  For example, Plaintiffs refer briefly to a desire to seek

injunctive relief for allegedly inadequate conditions related to "record-breaking low

temperatures" at FMC Carswell in February 2021.  (Doc. 33, ¶ 1.)  However, no facts are

pleaded showing deliberate indifference by BOP officials in this regard, and it is also

"apparent from the face of the complaint" that any such claim could not have been

administratively exhausted before Plaintiffs filed suit, as required by the Prison Litigation

Reform Act.  *See Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007); *see also* 42

U.S.C. § 1997e(a) (exhaustion requirement applicable to prisoner suits).  This action was

filed in August 2020, so by definition any alleged claims relating to the freezing

temperatures and power outages experienced across Texas in February 2021 could not

have been administratively exhausted at that time.

        Plaintiffs also briefly assert that Defendants incorrectly denied unspecified

requests for compassionate release or home confinement.  (Doc. 33, ¶ 1.)  But the only court with jurisdiction to consider issues relating to a prisoner's request for a compassionate release is the prisoner's sentencing court.  *See Himmel v. Upton*, No. 4:18-CV-804-O, 2019 WL 1112923, at *2 n.6 (N.D. Tex. Mar. 11, 2019).  Similarly, "various courts have recognized a district court has no jurisdiction to order home confinement under the CARES Act, as that decision is reserved to BOP."  *United States v. Gentry*, No. 5:03-5003305, 2020 WL 2131001, at *5 (W.D. La. May 5, 2020); *see also United States v. Miller*, No. 2:17-CR-15-D, 2020 WL 2514887, at *1 (N.D. Tex. May 15, 2020) ("[N]either the CARES Act nor the First Step Act authorizes the court to release an inmate to home confinement.").  Plaintiffs also do not plead any specific facts supporting any claim that some specific requests of theirs were improperly denied.  No claim is stated.

## V.     Conclusion

For all these reasons, the Court should dismiss Plaintiffs' consolidated complaint.

Respectfully submitted,

PRERAK SHAH
United States Attorney

/s/ Brian W. Stoltz
Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:  214-659-8626
Facsimile:   214-659-8807
brian.stoltz@usdoj.gov

Attorneys for Defendants Michael Carr
(in his official capacity as Warden of
Federal Medical Center, Carswell)
and Federal Bureau of Prisons

<u>Certificate of Service</u>

On August 9, 2021, I electronically submitted the foregoing document with the

clerk of court for the U.S. District Court, Northern District of Texas, using the electronic

case filing system of the court.  I hereby certify that I have served all parties

electronically or by another manner authorized by Federal Rule of Civil Procedure

5(b)(2).

/s/ Brian W. Stoltz
Brian W. Stoltz
Assistant United States Attorney