IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| SHELLY MIXON, et al., | § § | |
| Plaintiffs, | § § | |
| vs. | § § § § § § § § § § § § § § § § § § § § § | Civil Action No. 4:20-cv-854-P (Consolidated with Civil Action Nos: 4:20-cv-807-P, 4:20-cv-852-P, 4:20-cv-856-P, 4:20-cv-858-P, 4:20-cv-871-P, 4:20-cv-873-P, 4:20-cv-879-P, 4:20-cv-880-P, 4:20-cv-881-P, 4:20-cv-882-P, 4:20-cv-885-P, 4:20-cv-890-P, 4:20-cv-891-P, 4:20-cv-898-P, 4:20-cv-901-P, 4:20-cv-902-P, 4:20-cv-905-P, 4:20-cv-907-P, 4:20-cv-908-P, 4:20-cv-909-P, 4:20-cv-910-P, 4:20-cv-913-P, 4:20-cv-916-P, 4:20-cv-918-P, 4:20-cv-919-P, 4:20-cv-920-P, 4:20-cv-1045-P, 4:20-cv-1052-P, 4:20-cv-1081-P, 4:20-cv-1095-P, 4:20-cv-1096-P, 4:20-cv-1120-P) |
| WARDEN CARR, FMC CARSWELL, *et al.*, | § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

This consolidated case is before the Court for review of the inmate/plaintiffs' claims arising from their initial exposure to Covid-19 while incarcerated at FMC-Fort Worth against defendants Warden Michael Carr, in his official capacity, and the Bureau of Prisons. Consolidated Complaint (Compl.). ECF No. 33. Now pending is Defendants' initial motion for summary judgment regarding exhaustion of administrative remedies, along with a supporting brief and appendix. Mot. Summ. J., ECF No. 54; Summ. J. Brief, ECF No. 55; App., ECF No. 51-1. Plaintiffs filed a

responsive brief, and Defendants filed a reply. Summ. J. Resp., ECF No. 60; Reply, ECF No. 62. After review and consideration of the summary judgment motion, supporting documents, briefing and applicable law, the Court concludes that the summary judgment motion must be **GRANTED**, and that all Plaintiffs' claims must be **DISMISSED** for failure to exhaust administrative remedies under 42 U.S.C. § 1997e(a).

## PROCEDURAL HISTORY and BACKGROUND

All of these pending cases were filed, *pro se*, by inmates at the Bureau of Prisons' (BOP) FMC-Carswell facility in Fort Worth, Texas. The Court severed the bulk of the cases from case number 4:20-CV-807-P, filed on August 3, 2020, and opened a new suit on the basis of a handwritten complaint and supporting memorandum signed by and in the name of approximately 70 different inmates. Compl. 1, 46-47, Memorandum 4-6, *Blake v. Carr, et al.*, No. 4:20-CV-807-P, ECF Nos. 1 and 2. After the order of severance, approximately half of those inmate Plaintiffs then separately filed amended complaints and the in-forma-pauperis documents to maintain their own severed civil actions, all of which related back to the August 3, 2020 filing date. Although some of those cases were later dismissed for lack of prosecution or because the plaintiff was released, approximately 27 of those original Plaintiffs maintained their suits.[1] In the weeks following August 3, 2020, the Court also received six additional new cases from FMC-Carswell inmates asserting the same or similar claims, all filed between September 21, 2021, and October 9, 2021.[2]

As part of the Court's screening of all of these cases under authority of both 28 U.S.C. §

---

[1] These cases are listed in the style of this order sequentially between No. 4:20-CV-807-P and No. 4:20-CV-920-P.

[2] These cases are listed in the style as No. 4:20-CV-1045-P; No. 4:20-CV-1052-P; No. 4:20-CV-1081-P; No. 4:20-CV-1095-P; No. 4:20-CV-1096-P; and No. 4:20-CV-1120-P.

1915(e)(2) and § 1915A, the Court then appointed counsel for each of the above-referenced Plaintiffs, and appointed counsel then moved, and the Court granted, a motion to consolidate the individual suits into one consolidated case under the lead case number 4:20-CV-854-P. ECF No. 32. Appointed counsel then filed the existing operative amended pleading on behalf of the 33 remaining plaintiffs, entitled "Plaintiff's Consolidated Complaint for Injunctive and Declaratory Relief." Consolidated Compl., ECF No. 33. After service of the consolidated complaint, Defendants appeared through the filing of both a motion to dismiss, and with agreement from Plaintiffs' counsel, the instant motion for summary judgment regarding exhaustion of administrative remedies. ECF No. 54.

In the Consolidated Complaint, Plaintiffs bring claims under § 504 of the Rehabilitation Act of 1973 (codified as amended at 29 U.S.C. § 794) and under the Eighth Amendment, on the basis that they have been exposed to "inadequate and dangerous conditions" at FMC-Carswell, primarily in connection with the COVID-19 pandemic. Consolidated Compl. 1, ECF No. 33. They seek prospective declaratory and injunctive relief that would require: (1) the use of a "mitigation plan" against COVID-19 at FMC-Carswell, to be "overseen by a qualified public health expert"; (2) that "all necessary and appropriate healthcare" be provided to inmates at FMC-Carswell; and (3) the release of unspecified inmates after the BOP is required to "[e]stablish a process" to identify inmates who are "appropriate for release on home confinement, furlough or other release mechanisms." *Id.* at 24 (Request for Relief), ECF No. 33.

## SUMMARY JUDGMENT EVIDENCE

As noted, Defendants filed an appendix in support of the motion for summary judgment that includes a total of 164 pages of records. ECF No. 51-1. In particular, the appendix includes the August 6, 2021 Declaration of BOP Executive Assistant Churee Jones with thirty-seven

attachments. App. Declaration 1-19, ECF No. 51-1; App. Attachments 20-160, ECF No. 51-1. Jones recites that it is her responsibility to oversee the administrative remedy program at FMC-Carswell. App. 1, ECF No. 51-1. She declares that she has attached the BOP computerized records ("Sentry") of the Administrative Remedy Generalized Retrieval for each named inmate Plaintiff in this action. App. Declaration, 1-19; Attachment pages 20-160, ECF No. 51-1. Jones has also included additional records related to release or change in detention information for four of the plaintiffs. App. Attachments 7, 17, 24, and 27, ECF No. 51-1.

Plaintiffs have not provided any summary judgment evidence in response to the summary judgment motion.

## SUMMARY JUDGMENT STANDARD

When the record establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," summary judgment is appropriate. FED. R. CIV. P. 56(a). "[A dispute] is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001) (citation omitted). A fact is "material" if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To demonstrate that a particular fact cannot be genuinely in dispute, a defendant movant must (a) cite to particular parts of materials in the record (e.g., affidavits, depositions, etc.), or (b) show either that (1) the plaintiff cannot produce admissible evidence to support that particular fact, or (2) if the plaintiff has cited any materials in response, show that those materials do not establish the presence of a genuine dispute as to that fact. FED. R. CIV. P. 56(c)(1). Although the Court is required to consider only the cited materials, it may consider other materials in the record. *See* FED. R. CIV. P. 56(c)(3). Nevertheless, Rule 56 "does not impose on the district court a duty to sift

through the record in search of evidence to support a party's opposition to summary judgment. . . ." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 & n.7 (5th Cir. 1992). Instead, parties should "identify specific evidence in the record, and . . . articulate the 'precise manner' in which that evidence support[s] their claim." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (citing *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992) (other citation omitted)). In evaluating whether summary judgment is appropriate, the Court "views the evidence in the light most favorable to the nonmovant, drawing all reasonable inferences in the nonmovant's favor." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 380 (5th Cir. 2010) (citation omitted) (internal quotation marks omitted). "After the non-movant [here, the FMC-Carswell plaintiffs] has been given the opportunity to raise a genuine factual [dispute], if no reasonable juror could find for the non-movant, summary judgment will be granted." *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

Nevertheless, a motion for summary judgment for failure to exhaust is treated slightly differently. *See, e.g., Dillon v. Rogers*, 596 F.3d 260, 272-73 (5th Cir. 2010). "Exhaustion resembles personal jurisdiction and venue in that it is an affirmative defense that allows defendants to assert that plaintiffs have not invoked the proper forum for resolving a dispute." *Id.* at 272 (citing *Pavey v. Conley*, 544 F.3d 739, 741 (7th Cir. 2008)). Stated differently, exhaustion of administrative remedies is a "rule of judicial administration" that is akin to doctrines like 'abstention, finality, and ripeness . . . that govern the timing of federal court decision making.'" *Id.* (quoting *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) (other citation omitted)). Since exhaustion of administrative remedies is a "threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, we conclude that judges may resolve factual disputes concerning exhaustion without the participation of a jury." *Id.*

(citation and footnote omitted).

## ANALYSIS

### A.     Prison Litigation Reform Act ("PLRA") Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA") provides "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted). The Supreme Court has described the PLRA exhaustion provision as a "mandatory exhaustion" statute and has "reject[ed] every attempt to deviate . . . from its textual mandate." *Ross v. Blake*, 578 U.S. 632, 639–40 (2016); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court") (citing *Porter*, 534 U.S. at 524). The only "textual exception to mandatory exhaustion" in the PLRA is the "availability" of administrative remedies. *Ross*, 578 U.S. at 642. To determine what remedies are "available," and thus must be exhausted, courts look to "the applicable procedural rules . . . defined . . . by the prison grievance process itself." *Jones*, 549 U.S. at 218. Administrative relief is "available" so long as the prison administrator has the "authority to take some action in response to a complaint," even if that relief does not provide the precise "remedial action an inmate demands to the exclusion of all other forms of redress." *Booth v. Churner*, 532 U.S. 731, 736 and n.6 (2001) ("An inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."). As a result, "a court may not excuse a failure to exhaust, even to take [special]

circumstances into account." *Ross*, 578 U.S. at 639.

The Fifth Circuit has taken a strict approach to the exhaustion requirement. *Wilson v. Epps*, 776 F.3d 296, 299–300 (5th Cir. 2015) ("[P]risoners must not just substantially comply with the prison's grievance procedures, but instead must 'exhaust available remedies properly.'" (quoting *Dillon*, 596 F.3d at 268)). The Fifth Circuit has also recognized that "[w]hen a defendant asserts the defense of lack of exhaustion, the district court should rule on [the exhaustion] issue before allowing the case to proceed to the merits." *Nottingham v. Finsterwald*, 582 F. App'x 297, 297–98 (5th Cir. 2014) (citing *Dillon*, 596 F.3d at 272–73). And exhaustion must have occurred *before* the lawsuit is filed. *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012) ("Pre-filing exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted"); *see also Covarrubias v. Foxworth*, No. 6:13-CV-812, 2017 WL 1159767, at *3 (E.D. Tex. Mar. 29, 2017) (looking to whether administrative remedies had been exhausted "at the time of the filing of the original complaint" rather than any amended complaint). Also, when a prisoner "can no longer comply with the exhaustion requirement, because the deadline for completing the administrative remedy has passed, the court may dismiss the suit with prejudice." *McCoy v. Zook*, No. 3:20-CV-1051-B-BT, 2021 WL 811854, at *6 (N.D. Tex. Feb. 11, 2021), *rep and rec adopted*, 2021 WL 807249 (N.D. Tex. Mar. 3, 2021) (citing *Johnson v. La. Dep't of Pub. Safety & Corr.*, 468 F.3d 278, 280-81 (5th Cir. 2006) (per curiam); *Howard v. Gensil*, Civ. No. H-13-105, 2013 WL 6440952, at *2 (S.D. Tex. Dec. 9, 2013) ("[B]ecause the deadlines for administrative remedies have passed, the action is properly dismissed with prejudice.") Courts are not "to inquire whether administrative procedures satisfy minimum acceptable standards of fairness and effectiveness"; rather, "prisoner[s] must exhaust such administrative remedies as are available, whatever they maybe." *Alexander v. Tippah Cnty.*, 351 F.3d 626, 630 (5th Cir. 2003) (per curiam) (internal

quotation marks omitted) (citing *Booth*, 532 U.S. at 740 n.5; *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001)).

### B.     Application of Exhaustion to Plaintiffs' Records

As inmates at FMC-Carswell, each Plaintiff was required to exhaust the BOP's multi-step grievance process prior to filing her lawsuit. *See Hicks v. Garcia*, 372 F. App'x 557, 557 (5th Cir. 2010) (per curiam) (citing 28 U.S.C. § 1997e(a)) ("Under the Prison Litigation Reform Act, inmates must exhaust 'such administrative remedies as are available' prior to bringing a civil action"). As relevant to these federal inmate plaintiffs, codified BOP regulations define the grievance procedures. *See* 28 C.F.R. §§ 542.10 *et seq*. First, a prisoner must attempt to informally present the issue to staff. 28 C.F.R. § 542.13(a). If that fails, the prisoner may then submit a "Request for Administrative Remedy" to the prison's warden. *Id.* §§ 542.13(a), 542.14. If the prisoner is not satisfied with the warden's response, she may appeal to the BOP's regional director. *Id.* § 542.15(a). If the prisoner is unsatisfied with the regional director's response, she may appeal to the BOP's general counsel. *Id.* The regulations also provide that if a "request is determined to be of an emergency nature which threatens the inmate's immediate health or welfare," the Warden must respond within three days after filing. *Id.* § 542.18. As this Court has explained, "[a]dministrative remedies have not been exhausted until the inmate's claim has been filed at all levels and has been denied at all levels." *Wood v. Carr*, No. 4:20-CV-1365-P, 2021 WL 2207202, at *3 (N.D. Tex. June 1, 2021).

Here, a review of the administrative-remedy records maintained by the BOP in the ordinary course of business shows that none of the plaintiffs timely exhausted administrative remedies. As explained in the declaration of BOP official Churee Jones submitted in support of the summary judgment motion, no Plaintiff exhausted administrative remedies with respect to her allegations in

this lawsuit prior to filing suit. *See* App. 002–18 (providing explanations of each Plaintiff's relevant administrative-remedy history in Jones's declaration), ECF No. 51-1; *see also* App. 020–160 (providing copies of BOP administrative-remedy records for each Plaintiff), ECF No. 51-1.

The BOP's administrative-remedy records show that Plaintiffs did have access to the administrative-remedy process and were able to successfully file (and administratively appeal) a number of administrative-remedy requests at or around the time the lead lawsuit was filed in August 2020. *See, e.g.*, App. 006 (discussing a request to warden filed by plaintiff Stephanie Walker on August 14, 2020), ECF No. 51-1; App. 006-07 (discussing a request to warden filed by plaintiff Georgia Gregg on April 28, 2020); App. 007 (discussing a request to warden filed by plaintiff Juliana Lourde on August 14, 2020). No plaintiff, however, fully exhausted the administrative process on the claims that are the subject of this lawsuit. *See* Doc. 51-1 at App. 002–18. Moreover, Plaintiffs were able to engage in other activities similar to what is required to exhaust administrative remedies during this time (e.g., preparing a written document and mailing it to a specific recipient). They were able to file this lawsuit and numerous supporting documents and motions, for example. *See, e.g.*, ECF No. 2 (memorandum in support of complaint); ECF No. 3 (motion to appoint counsel); ECF No. 8 (motion to extend time); ECF No. 12 (motion to extend time).

In addition, court records show that some Plaintiffs were able to file compassionate-release motions with their sentencing courts around the time suits were filed. *See, e.g.*, Motion to Reduce Sentence 1-2, *United States v. Mixon*, No. 7:18-CR-175-DC (W.D. Tex. Jun 15, 2020), ECF No.101 (compassionate-release motion filed by plaintiff Shelly Mixon in her sentencing court on June 15, 2020, asking to be excused from the exhaustion requirement on grounds that the COVID-19 pandemic was an emergency situation); Motion Under 18 U.S.C. § 3582 Compassionate

Release 7-8, *United States v. Snodgrass*, No. 1:17-CR-6-HSO-JCG (S.D. Miss. July 21, 2020), ECF No. 57 (compassionate-release motion filed by plaintiff Tiffany Snodgrass in her sentencing court on July 21, 2020, in which Snodgrass explained that she had chosen not to pursue the "task of doing the administrative remedies" because she believed that the COVID-19 pandemic justified excusing that obligation). The filing of motions to reduce by plaintiffs Mixon and Snodgrass in June and July 2020 provide additional indication that Plaintiffs had the ability to engage in the kinds of activities necessary to pursue administrative remedies if they so desired, but simply chose not to do so.

### C. Plaintiffs' Arguments that the Administrative Remedy Process was Unavailable or Should be Excused

In response to the defendants' motion for summary judgment, Plaintiffs do not argue that any particular inmate Plaintiff took the steps necessary to complete the BOP administrative remedy process. Plaintiffs do not contest the defendants' evidence with any evidence in rebuttal. Rather, Plaintiffs argue that the remedy was unavailable, citing the Supreme Court's decision in *Ross* for the proposition that "an inmate . . . must exhaust available remedies but need not exhaust unavailable ones." Summ. J. Resp. 8, ECF No. 60 (citing *Ross*, 532 U.S. at 642). Availability, however, does not turn on the types of remedies available through the administrative procedures, but on the administrative procedures themselves. *Booth*, 532 U.S. at 738. The Court explained in *Ross* that "[t]he modifier 'available' requires the possibility of some relief." *Ross*, 578 U.S. at 643 (citing *Booth*, 532 U.S. at 738).

The Supreme Court noted three kinds of circumstances in which administrative remedies. "although officially on the books, [are] not capable of use to obtain relief." *Ross*, at 643. *First*, "an administrative procedure is unavailable when . . . it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id*. (citing

*Booth*, 532 U.S. at 736). *Second*, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* at 643-44. *Third*, a remedy can become unavailable when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 644. Plaintiffs contend that they fit within the first exception listed above, "because there is no relief available if they are forced to wait until after the medical emergency that is the Delta variant of COID-19 has passed." Summ. J. Resp. 9, ECF No. 60. For several reasons set forth below, the Court rejects this argument.

*First*, although Plaintiffs suggest that the currently circulating Delta variant of COVID-19 may provide an excuse to the failure to exhaust administrative remedies, the relevant time for assessing whether remedies were exhausted, as noted above, is the date on which suit was filed. *See Gonzalez*, 702 F.3d at 788. In this case, that was August 3, 2020, for the bulk of Plaintiffs, and as noted above, by no later than October 9, 2020, for others. The Delta variant was not in existence then.[3] Thus, the later presence of the Dela variant cannot support any argument by Plaintiffs that administrative remedies were not "available" to them at the time their suits were filed. To the contrary, if Plaintiffs had begun the administrative-remedy process in late summer or early fall 2020, instead of prematurely filing suit, they could have completed the administrative remedy process within a matter of weeks and would have been able to then bring a properly exhausted lawsuit at some point in the fall of 2020. Timely satisfaction of the exhaustion requirement would have *still* been completed before the presence of the Delta Variant of COVID-19.

Relatedly, Plaintiffs incorrectly characterize the exhaustion requirement by stating that applying it in their case would "force [] [Plaintiffs] to wait until after the medical emergency that

---

[3]*See* https://yalemedicine.org/news/5-things-to-know-delta-variant-covid (Noting that Delta Variant was first identified in India in December 2020 and later spread through that country and Great Britain before reaching the United States). The Court takes judicial notice of this information. *See* FED. R. EVID. 201(a), (b)(2), and (c)(1).

is the Delta Variant of COVID-19 has passed." Summ. J. Resp. 9, ECF No. 60. But, there is no link between Plaintiffs' ability to properly exhaust administrative remedies and the possible presence and spread of the Delta Variant. As noted, Plaintiffs were required to exhaust administrative remedies before filing suit. *Gonzalez*, 702 F. 3d at 788. The exhaustion requirement is not onerous, but instead only requires that an inmate present her request to the appropriate decision makers within the BOP, and then appeal to the next level (or, ultimately, bring litigation) if a response is not timely received. *See* 28 C.F.R. §§ 542.10, 542.13, 542.14, 542.15. The regulations include an expedited response time if the request is of "an emergency nature which threatens the inmate's immediate health or welfare." 28 C.F.R. § 542.18. Plaintiffs have not shown that they began or completed these steps and/or made any effort to request any expedited response.

Plaintiffs also contend in their response that "no relief [was] available" to them through the administrative process. Summ. J. Resp. 9, ECF No. 60. But administrative relief is 'available' so long as the prison administrator has the "authority to take some action in response to a complaint." *Booth*, 532 U.S. at 736. Plaintiffs have not shown that there was no possible form of relief or action that the defendants could have provided through the administrative process had the Plaintiffs pursued the administrative remedy process.

Among other things, Plaintiffs allege that Defendants' COVID-19-prevention practices were deficient because Plaintiffs purportedly were denied access to "hand sanitizer, gloves, and proper personal protective equipment," were "given only one cloth mask," and were given "watered down" soap or at times denied soap. Consolidated Compl. ¶ 64, ECF No. 33. Plaintiffs also assert that certain surfaces and areas within the prison were not cleaned or disinfected enough, that inmates were prevented from participating in certain outdoor activities, and that Defendants failed to provide necessary medical care. *Id*. ¶¶ 65, 66, 100. Plaintiffs cannot plausibly argue that

the warden of FMC-Carswell, or other officials within the BOP to whom second and third-level administrative requests could have been submitted, could not have taken any action with respect to these sorts of matters in response to an administrative-remedy request. Prison cleanliness and sanitation and other similar matters of the condition of prison housing can, in fact, be addressed administratively. *See Montgomery v. Barr*, 507 F. Supp. 3d 711, 725 (N.D. Tex. 2020) (explaining that a federal death-row inmate's lawsuit challenging the circumstances of the inmate's planned transfer to another facility for her execution, with respect to things like staffing and the training of involved BOP personnel, presented "precisely the sort of complaints that could easily be resolved . . . informally or administratively," and thus the administrative-remedy process was not "unavailable").

No court order or judgment would be required before a BOP warden could direct that certain areas of a prison be cleaned or arrange for different or more soap to be provided, or have additional masks or other supplies distributed, or take other similar steps in response to the COVID-19 pandemic. Indeed, Plaintiffs' own consolidated complaint cites the BOP's COVID-19 web-page, which details the various preventative steps that the BOP had then taken to mitigate the risk of COVID-19 in its facilities (including the use of modified operations plans to limit visitation, maximize social distancing, and prevent congregate gatherings, enhanced medical screenings, widespread testing and vaccination, and other safety protocols). *See* Fed. Bureau of Prisons, COVID-19 Coronavirus, www.bop.gov/coronavirus (cited in Consolidated Compl. ¶ 56 & n.33, ECF No. 33). There is no support for Plaintiffs' claims that such measures would not have been possible if administrative procedures had been followed.

Finally, Plaintiffs' brief focuses extensively on the various decisions by the district court and the Fifth Circuit issued over the course of the *Valentine v. Collier* litigation arising from the

Southern District of Texas. Summ. J. Resp. 9-12, ECF No. 60. The Court rejects Plaintiffs' claim that the *Valentine* litigation shows that "courts are still undecided on how the PLRA is affected by COVID-19." *Id.* at 12. In *Valentine v. Collier*, 455 F. Supp. 3d 308 (S.D. Tex. 2020), the district court found the Texas Department of Criminal Justice's ("TDCJ") administrative remedy was "not 'capable of use' to obtain the relief Plaintiffs seek" because "of the alarming speed with which COVID-19 has ravaged our country and prisons"; as a result, "Plaintiffs were not obligated to exhaust prior to brining [that] action." *Id.* at 320–21. But, in determining whether to grant TDCJ's motion to stay the district court's preliminary injunction pending appeal, the Fifth Circuit held instead that "TDCJ's grievance procedure [was] 'available,' and Plaintiffs were required to exhaust" because "[r]elief by TDCJ . . . remain[ed] possible (and the procedure available), even if TDCJ had not acted as swiftly as Plaintiffs would like." *Valentine v. Collier*, 956 F.3d 797, 804-05 (5th Cir. 2020) (per curiam) (citations and footnote omitted); *see also Valentine v. Collier*, 140 S. Ct. 1598, 1598 (2020) (denying application to vacate stay).

When a Fifth Circuit motion's panel later separately considered whether to stay the district court's permanent injunction, the appellate court came to the same conclusion concerning the PLRA's exhaustion requirement. The court of appeals determined "[t]he district court impermissibly applied a 'special circumstances' exception" in determining the grievance process was unavailable because it was incapable of responding to the rapid spread of COVID-19. *Valentine v. Collier*, 978 F.3d 154, 161 (5th Cir. 2020) (citing *Valentine v. Collier*, [490 F. Supp. 3d 1121, 1160-63] (S.D. Tex. 2020)). The Fifth Circuit expressly noted that "under *Ross*, special circumstances–even threats posed by global pandemics–do not matter." *Id.* at 161. The court of appeals went on to explain that although "the spread of COVID-19 . . . is an emergency that demands prison officials' full attention," the district court erred because "emergencies are not 'license to carve out new exceptions to the PLRA's exhaustion requirement, an area where [court]

authority is constrained.'" *Valentine*, 978 F.3d at 161 (quoting *Dillon*, 596 F.3d at 270).[4]

Applying this law to another federal inmate plaintiff's claims that the BOP's administrative remedy process was not available to challenge COVID-19 conditions, another court in this district recognized, "[t]hus, Fifth Circuit precedent is clear that the rapid spread of COVID-19 in a prison does not render that institution's grievance process 'unavailable' for exhaustion under the PLRA, even if the process is 'suboptimal." *McCoy*, No. 3:20-CV-1051-B-BT, 2021 WL 811854, at *7 (citing *Valentine*, 978 F. 3d at 162 (internal quotation omitted)). Like the Fifth Circuit, and the district court in *McCoy*, this Court is bound by the PLRA's exhaustion requirement "even in these unprecedented times." *McCoy*, 2021 WL 811854, at *8.

Other courts to address this issue have similarly rejected prisoners' claims that the COVID-19 pandemic rendered administrative remedies unavailable for purposes of exhaustion. *See Marshall v. LeBlanc*, Civ. No. 18-13569, 2020 WL 2838577, at *4 (E.D. La. Jun. 1, 2020) (rejecting claim that administrative remedy was unavailable and noting "[j]ust as in *Valentine*, a remedy is available when it is possible even if it may not be addressed as quickly as Plaintiff would like. Accordingly, Plaintiff's failure to exhaust administrative remedies as required by the PLRA cannot be excused . . ."); *see also Nelson v. Barnhart*, 454 F. Supp. 3d 1087, 1094 (D. Col. April 16, 2020) (rejecting challenge to COVID-19 conditions by inmate at USP-Florence purporting to represent a class of other inmates, because Plaintiff failed to exhaust and noting "the Court does not overlook the risks of COVID-19 at USP Florence or in the prison system generally. But the Court may not alter the mandatory requirements of the PLRA for COVID-19 or any other special

---

[4]When the appeal was then later considered by a merits panel (with a stay in place), two judges on the panel determined plaintiffs were not entitled to relief for other reasons and thus did not reach the exhaustion issue. *See Valentine v. Collier*, 993 F.3d 270, 291 (5th Cir. 2021). The opinion noted that a court can pretermit the exhaustion issue in order to *dismiss* meritless claims. *See id.* at 291 n.51. A concurring opinion observed that the case could have been dismissed for failure to exhaust administrative remedies without consideration of the other issues that the panel majority considered. *See id.* at 294 (Oldham, J., concurring).

circumstance.") (citing *Ross*, 578 U.S. at 639 ("[A] court may not excuse a failure to exhaust, even to take [special] circumstances into account").)

Accordingly, the Court concludes that Plaintiffs were required to exhaust their administrative remedies under the PLRA before filing their lawsuits, despite the presence of COVID-19.

### D. Defendants have Discharged their Summary-Judgment Burden

Toward the end of their response, Plaintiffs argue that the defendants have failed to meet their burden to show the Court that no genuine issue of material facts exists. Summ. J. Resp. 13, ECF No. 60. As detailed above, however, Defendants met their summary-judgment burden by identifying the regulations which establish the BOP's administrative-remedy process and by providing a declaration setting forth facts regarding each Plaintiff's individual administrative-remedy histories, along with printouts from the BOP's administrative-remedy database showing these histories. Summ. J. Mot. 4, ECF No. 55; App. 001–160, ECF No. 51-1. Defendants thereby established for summary-judgment purposes that an administrative-remedy process was generally available to Plaintiffs. The burden at that point shifted to Plaintiffs to show that this process was, in fact, unavailable for some specific reason. *See Jackson v. Hall,* 736 F. App'x 376, 377 (5th Cir. 2019) (noting that once Mississippi corrections officials met their burden of showing no genuine issue of material fact regarding exhaustion, inmate was required to "come forward with specific facts showing there was a dispute as to exhaustion") (citations omitted); *see also Amos v. Cain*, No. 4:20-CV-7-DMB-JMV, 2021 WL 1080518, at *7 (N.D. Miss. Mar. 19, 2021) (explaining that the "defendants have shown that [plaintiff] failed to exhaust a generally available remedy" through a declaration stating that none of the plaintiffs "submitted a grievance related to any claim at issue here, much less pursued such a claim to conclusion," and that, thereafter, "the burden shifts to the plaintiffs to show that the generally available remedy was, in fact, unavailable").

16

As the Fifth Circuit has explained, "[e]xceptions to the exhaustion requirement apply only in 'extraordinary circumstances,' and [the plaintiff] bears the burden of demonstrating the futility of administrative review." *Schipke v. Van Buren*, 239 F. App'x 85, 86 (5th Cir. 2007) (citing *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994)); *see also id.* (explaining further that the plaintiff "failed to carry her burden of showing that administrative remedies are either unavailable or wholly inappropriate to the relief sought or that exhausting her claims through the administrative process would be futile"). Plaintiffs have not come forward with evidence to show the unavailability of the administrative exhaustion process.

The Court also addresses Plaintiffs' final claim that Defendants failed to show that the injunctive relief sought in this action is available through administrative remedies. Summ. J. Resp. 14, ECF No. 60. Plaintiffs' contention assumes that there must be some exact congruence between the relief that is available in the administrative process and the relief that is sought in litigation. But that is not the law. Instead, administrative relief is "available" for PLRA purposes so long as the prison administrator could conceivably "take some action in response to a complaint," even if that relief does not provide the precise "remedial action an inmate demands to the exclusion of all other forms of redress." *Booth*, 532 U.S. at 736. In *Booth*, for example, the prisoner was exclusively seeking money damages and it was undisputed that money was not available through the prison grievance process, yet the Supreme Court held that the exhaustion requirement still applied. *See id.* at 735. Here, as the Court has established, the exhaustion requirement likewise applies to the relief sought by Plaintiffs. As explained above, there is no merit to a claim that BOP officials had no authority to take any action whatsoever that would potentially be responsive to concerns from inmates about COVID-19.

## CONCLUSION

For all of these reasons, Plaintiffs fail to identify any genuine dispute of material fact

concerning the availability of the administrative-remedy process. Plaintiffs could have exhausted administrative remedies prior to filing suit but did not. Therefore, summary judgment in Defendants' favor is warranted.[5]

## ORDER

It is therefore **ORDERED** that the defendants' motion for summary judgment on the basis of exhaustion of administrative remedies (ECF No. 54) is **GRANTED,** such that all Plaintiffs' claims are **DISMISSED WITH PREJUDICE.**

**SO ORDERED** on this **1st day** of **November, 2021**.

*[signature]*

Mark T. Pittman
UNITED STATES DISTRICT JUDGE

---

[5]Defendants separately filed a motion to dismiss on several grounds. ECF No. 48. Because all claims in this case must be dismissed on the basis of lack of exhaustion, the Court does not reach the arguments in the motion to dismiss. Also, before the defendants appeared, the plaintiffs filed a motion for appointment of an expert under Federal Rule of Evidence Rule 706(a). ECF No. 39. Because the Court will not reach the merits of Plaintiffs' claims due to lack of exhaustion, the Court need not address the motion for appointment of an expert.